CHARLES CLEVELAND, Respondent, v. THE NEW JERSEY STEAMBOAT COMPANY, Appellant.

One who enters upon a passenger steamboat in good faith to take passage thereon is there in the relation and character of a passenger, and the owner of the boat owes to him the duty of a carrier of passengers, although no fare has been paid.

Plaintiff went on board one of defendant's boats at New York to take passage to A. He stood in front of the gangway opening, inside the bulwarks, but outside of the main part of the boat. Defendant had provided means and appliances sufficient to protect the gangway, *i. e.*, a gate supported by stanchions, with a top rail, etc. The top bar of the gate projected at each end, which, when the gate was in place, rested in iron staples, sufficient to hold the gate in place unless it was broken. The mate had put the gate in place, and as the boat started, was in the act of taking the stanchions and top rail to put them in their proper places, when a person on board, in attempting to jump ashore, fell into the water. This caused a rush of passengers to the side, who pushed plaintiff against the gate. One end of this had been lifted out of the staples by some unauthorized person. The gate gave way and plaintiff fell overboard and was injured. In an action to recover damages, *held*, that plaintiff's position near the gangway opening was not such as to charge him with contributory negligence as matter of law; but that the evidence failed to show negligence on the part of defendant, and that a refusal to nonsuit was error.

*Cleveland v. New Jersey Steamboat Company* (5 Hun, 523) reversed.

(Argued January 17, 1877; decided January 30, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 5 Hun, 523.)

This action was brought against defendant as a common carrier of passengers to recover damages for injuries alleged to have been received by plaintiff while a passenger on one of its steamboats, through its negligence.

On September, 8, 1873, plaintiff went on board of defendant's steamboat St. John, then lying at the wharf in the city of New York, to take passage to Albany. As the boat started he was standing in front of the gangway opening, where he

had entered, some four or five feet inside the bulwarks, but outside the partition, between the gangway and main part of the boat. Defendant had provided a gate to close the gangway opening, the top bar of which projected at each end. The projecting ends of this bar, when the gate was in its place, rested in iron staples at each end of the opening, to prevent the gate from swinging, and there were two upright stanchions placed outside the gate, let into the deck. There was also a top rail which received the stanchions, and which, when in place, was secured by iron slides. The referee found "that the opening of the said gangway was, when the gate, stanchions and top rail were in their places, and the fastenings were in their places, properly and sufficiently closed, and that such gate, stanchions, top rail and fastenings, when in their places, were, in construction and quality, sufficient for the protection of passengers."

Before the boat left the wharf, the mate had put the gate in place. He requested the passengers to step inside, but plaintiff did not hear the request. As the boat moved out, persons on board attempted to jump ashore, but fell into the water. This caused a sudden rush of a crowd of passengers to the side. Plaintiff was pushed against the gate. One of the projecting ends of the top bar had been lifted out of the staple by some unauthorized person after the boat started. The pressure caused the gate to give way, although it was not broken, and plaintiff fell overboard. The mate of the steamer, at the time of the accident, had turned to get the stanchions and top rail to put them in their places.

At the close of the evidence defendant's counsel moved for a nonsuit, which was denied, and said counsel duly excepted.

The referee found that the leaving the gangway opening after the steamer had left the wharf without the full and proper protection provided was negligence.

Further facts appear in the opinion.

*W. P. Prentice* for the appellant. Defendant was not guilty of negligence. (*Putnam* v. *Broadway and Seventh*

*Avenue Railroad Co.,* 55 N. Y., 108; *Dougan* v. *Champlain Tr. Co.,* 56 id., 1; *Joy* v. *Win. Co.,* 114 Mass., 63; *Crocheron* v. *N. S. S. I. F. Co.,* 56 N. Y., 656; *Cornman* v. *E. Cos. R. Co.,* 4 H. & N., 781; *Littlefield* v. *City of Norwich,* 41 Conn., 406; *Crafter* v. *Met. R. Co.,* 1 Jur. [N. S., Pt. 1.], 272.) No presumption of negligence arises from the mere fact that an accident has happened. (*Curtis* v. *Roch. and S. R. R. Co.,* 18 N. Y., 534; *Aston* v. *Heaven,* 2 Esp., 533; *Hammack* v. *White,* 11 C. B. [N. S.], 588; *Livingston* v. *Adams,* 8 Cow., 175; *Jackson* v. *Bellevue,* 30 Wis., 237; *Putnam* v. *B. and Seventh Avenue R. R. Co.,* 55 N. Y., 108; *C. B. and I. R.* v. *Hazzard,* 26 Ill., 373; 2 Redf. on R. R. [3d. ed.], 200, par. 19, 20; *Milton* v. *H. R. Stbt. Co.,* 37 N. Y., 210; 11 C. B. [N. S.], 596; 103 Eng. C. L. [4 H. & N.], 781.) The burden was on plaintiff to show actual fault on defendant's part, causing directly, necessarily and exclusively his injury and he could not recover. (*Dygert* v. *Bradley,* 8 Wend., 472; *Kelsey* v. *Barney,* 12 N. Y., 425; *R. R. Co.* v. *Reeves,* 10 Wal., 176; *Brown* v. *E. and N. A. R. R. Co.,* 58 Me., 384; Inst. 4, tit. 3, *De lege Ag.*; *Cotton* v. *Wood,* 8 C. B. [N. S.], 568; *Toomey* v. *L. Br. and S. C. R. Co.,* 3 id., 146; *Milton* v. *H. R. Stbt. Co.,* 37 N. Y., 210; 56 id., 656; 49 id., 47, 57.) Plaintiff's negligence contributed to the accident and he cannot recover. (*Brown* v. *Maxwell,* 6 Hill, 592; *Wild* v. *H. R. R. R. Co.,* 24 N. Y., 430; *Button* v. *H. R. R. R. Co.,* 18 id., 248; *Bowen* v. *N. Y. C. R. R. Co.,* id., 408; *Ernst* v. *H. R. R. R. Co.,* 39 id., 61; *Spooner* v. *Brooklyn City R. R. Co.,* 31 Barb., 419; 36 id., 217; *Van Schaick* v. *H. R. R. R. Co.,* 43 id., 527; *Roulston* v. *Clark,* 3 E. D. S., 366; *Lehey* v. *H. R. R. R. Co.,* 4 Robt., 204; *Garet* v. *M. and L. R. R. Co.,* 16 Gray, 501; *Bancroft* v. *B. and W. R. R. Co.,* 97 Mass., 275; *Morrison* v. *Erie R. Co.,* Alb. L. J., January 9, 1875.)

*D. C. Stoddard* for the respondent. Defendant was liable as a common carrier of passengers. (S. & R. on Neg., §§ 262, 263, p. 304; *Gordon* v. *G. St. R. Co.,* 40 Barb., 546.)

Defendant was bound to use to the utmost the care and diligence of a very cautious person. (S. & R. on Neg., § 266 and note; *Brown* v. *N. Y. C. R. R. Co.*, 18 N. Y., 408; *Maverick* v. *Eighth Avenue R. R. Co.*, 36 id., 378; *Caldwell* v. *N. J. Stbt. Co.*, 47 id., 282; *Carroll* v. *S. I. R. R. Co.*, 58 id., 26; *Flint* v. *Nor. Tr. Co.*, 34 Conn., 554; *P., Ft. W. and C. R. Co.*, v. *Hinds*, 53 Penn., 512; *Simson* v. *N. B. Stbt. Co.*, 97 Mass., 361; *Putnam* v. *B. and Seventh Avenue R. R. Co.*, 55 N. Y., 113; *Wicoff* v. *Queens Co. Ferry Co.*, 52 id., 32; *Clark* v. *Un. F. Co.*, 35 id., 485.)   The omission of defendant's servants to put in the stanchion posts and put on and secure the top rail before starting, was negligence. (*Curtiss* v. *R. and Syr. R. Co.*, 18 N. Y., 534; *Jetter* v. *N. Y. C. and H. R. R. R. Co.*, 2 Keyes, 154.)   Plaintiff was not guilty of contributory negligence. (*Brown* v. *B. and S. L. R. R. Co.*, 22 N. Y., 191.)

FOLGER, J.   We do not think that the evidence will warrant us in holding as matter of law, that the plaintiff is chargeable with contributory negligence in taking his place inside the bulwarks, yet outside of the partition between the gangway and the main part of the boat.   There is nothing to show that it was a position of such obvious or well known danger, as that an ordinarily prudent and cautious man would hesitate to remain standing there, at the moment of the starting of the boat, to take leave of friends on the wharf.   The order or request from the mate for all passengers to step inside, was not heard by the plaintiff.

The more important question is, whether the defendant is chargeable with negligence causing the mishap to the plaintiff.

The plaintiff went on to the boat for the purpose of taking passage on that trip, and though he had not yet procured a ticket, he was, if he remained on board, liable for the payment of the passage-money.   He was there in the character and relation of a passenger.   The defendant owed him the duty of a carrier of passengers to a person in its charge as such.   That duty is, to use the strictest diligence, to protect

the life and person.   By this rule the defendant is liable for any injury which might reasonably be anticipated to occur, in view of all the circumstances, and of the nature of the carriage, and the number and character of the persons upon the boat; (*Flint* v. *Nor. and N. Y. Trans. Co.*, 34 Conn., 554; *Putnam* v. *Broadway and Seventh Avenue Railroad Co.*, 55 N. Y., 108, 119.)   This broad statement has limits.   A carrier of passengers is not bound to foresee and provide against casualties never before known and not reasonably to be expected; (*Dougan* v. *Ch. Tr. Co.*, 56 N. Y., 1; see also *Wyckoff* v. *Queens County Ferry Co.*, 52 N. Y., 32; *Crocheron* v. *N. S. and S. I. Ferry Co.*, 56 N. Y., 656.)   Hence his duty is not to be estimated by what, after an accident, then first appears to be a proper precaution against a recurrence of it; (*Bowen* v. *N. Y. Cent. Railroad Co.*, 18 N. Y., 408 ; *Dougan's case, supra.*)

Keeping these rules in view, we may inquire just what is charged upon the defendant as a fault, and whether the law fixes that upon it as negligence.

It is not claimed that it had not provided all the means and appliances, which the most prudent and intelligent forethought would have devised, nor that they were insufficient and incompetent of their kind.

Indeed it seems to be conceded, that the defendant had upon the boat the means and appliances, sufficient in kind and strength and adaptation, to have prevented the accident which happened.   Moreover, it appears that coincident with the accident, the mate of the boat was in the act of taking the rails and stanchions to put them in their proper places for the voyage, and that he had already put the gate properly and securely in its position across the gangway.   The allegation of negligence is then narrowed to this, that all of these appliances were not put in the position for which they were designed, before or immediately coincident with the starting of the boat.   The gate across the gangway was put in its place in due time.   It did not break under pressure, so it did not thus occasion or aid the accident.   The testimony is

uncontradicted, from unimpeached witnesses, that the gate could not, unbroken and whole, be pushed or sprung out from the staples which held it at either end. It is established that after the gate was properly in place, and before the accident, the forward end of it was lifted from the staple, and it was left hanging by the after end; so that the accident did not occur from the gate not having been put in place, or from its not being fit and sufficient for the purpose, but from the unauthorized displacing of it by some volunteer or wrongdoer, not an employe of the defendant; and from the rush upon the plaintiff of other passengers in unthinking and heedless eagerness to see the man overboard. There is no proof that if the gate had been left in place it would not have resisted or sufficiently checked that rush. There is no proof that the passengers who made it, were not as orderly and well-behaved as any body of travelers which, from day to day, took passage with the defendant. There is no proof that such an accident, or one like it in any of its features or causes, ever took place before. The ground for the charge of negligence is then reduced to this: A presumption is indulged, that if, in addition to the gate being in place, the stanchions had been in, and the rail had been on top and fastened, before or at the instant of the boat leaving the wharf, the meddler with the gate would not have been able to have displaced the rail as well as the gate, so that the plaintiff could then also have been pushed through the gangway.

If it be conceded that the occurrence of just the same thing again would be an act of negligence, it is still to be ascertained that it was one which on that, or any evening, was then reasonably to be anticipated, and which the defendant ought to have expected, as liable to take place in the natural course of things. The learned General Term answers this in the affirmative, and gives the strength of the argument to be made in support of that answer. A reason urged is, that anticipation of it is shown, because provision was made against it. This assumes, it seems to us, for there is no proof of it, that the gate and rail and stanchions had for their chief purpose to guard against just such an accident as this. We are taught by the

*Dougan case* (*supra*), that there is another accident which may take place upon these boats, and of which this provision, especially that of the gate, would prove an ample preventive. Let us consider, too, that all steam vessels are not run for carrying passengers, and that all that are run for that purpose are not so crowded as this one was with passengers and their friends at the moment of starting. Yet all steam vessels are built with this same movable rail over the gangway, fastened in the same way, and very many, if not all, with the stanchions under it. Are we justified, then, in assuming that because the defendant built its boat as other steam vessel owners have for a long time built theirs, that the defendant anticipated that this accident might some time happen? Is it not rather the more rational inference, that the rail and stanchions were supplied to this boat by the defendant, in the ordinary manner of building such boats, and for the ordinary purpose? Doubtless to put a visible and strong obstacle to a person on board, who might, without it, carelessly walk over the side; not so necessarily as that we may assume it to be so, to enable one on board, pressed against it by a crowd behind him, to resist being thrust overboard. For the former mode of mishap, even with the safeguards of bulwarks and rails, is not unprecedented; the latter, at the time of this occurrence, so far as we are informed, was unknown. Another reason urged is, that the boats of the defendant are liable to be crowded, especially at gangways, at the time of starting. This is true, but it does not follow that so extraordinary and unprecedented a concurrence of circumstances should be expected to happen. In the first place, an attempt of three rash persons to regain the land after the boat had started; then the entirely heedless and unthinking rush and pressure of a crowd of passengers of ordinary sobriety and prudence; and then the wrongful opening of the gate by an unauthorized person. Had not these three things conjoined we may not say that the plaintiff would have been harmed. It may be further conceded, that there is likely to be in the number collected, some unthinking and careless and rash man, who will neglect to go

ashore in time, and will make the attempt to leap to land after the boat has left the wharf, and will fall short. It may be conceded, that the gathering on one of these boats will be swayed by the impulses which would affect the like number and character of people in any other place, and that the happening of any thing tending to excite interest and curiosity, and attract attention, will cause it to mass itself suddenly at the point of interest. But even if it be allowed that the eagerness to see a man casually in the water, would cause it to press so recklessly of the safety of its members towards the edge of the boat, there is still to be established, a reasonable anticipation that it would occur in combination with the wrongful opening of the gate, whereby those in front could be shoved through and overboard. It had not been known so to occur before, and we do not think that it can be said that it was reasonably and naturally to be looked for as liable to take place then. The case is without a syllable of proof that such an accident ever happened before, or that any one of the constituents of it ever happened before. Now these were the proximate causes of the accident. The mishap could scarcely have happened without conjunctive occurrence of them, and more especially without the willful interference of the person who displaced the gate. We see no facts in proof, from which it can be said that such an occurrence was reasonably to be anticipated, or that it was or should have been contemplated by the defendant, as in the nature of things likely to occur. It seems to us, that the doctrine of the *Dougan case (supra)*, and that of *Crocheron* v. *Ferry Company* (56 N. Y., 656), are applicable and controlling here, and that the defendant is not chargeable with negligence for not putting in place the rail and stanchions before the starting of the boat. Experience had not shown that danger was to be apprehended from this source, and that it was necessary to be guarded against; (*Dougan Case, supra.*) With these views on the main question, it is not necessary that we consider the minor questions of the reception and rejection of evidence under objection.

SICKELS—VOL. XXIII.    40

The motions for nonsuit, on testimony in which there was no material conflict, and exception to a denial, present a question of law. Our decision of that in favor of the defendant leads to a new trial.

The judgment should be reversed and a new trial granted. All concur.

Judgment reversed.