JOHN LOFTUS, ADMINISTRATOR, &c., RESPONDENT, *v.* THE UNION FERRY COMPANY OF BROOKLYN, APPELLANT.

*Ferry company—duty of, as to guarding against accidents to its passengers.*

Ferry companies are not insurers of the absolute safety of their passengers, either while they are coming upon or are leaving the boat; nor are they bound to guard against possible accidents. which could not reasonably be foreseen.

The defendant, a ferry company, landed its passengers by means of a float or bridge, which served to connect the boat with the shore. Between this float and the piers on each side of it was a space of from eight to fourteen inches, to admit of its rise and fall with the tide, and of the lateral swaying caused by its being struck by the boat. Upon the sides, near the piers, where the passengers came on and off the boat, a square beam eight inches in height ran along the flooring, upon which rested a circular beam, starting from the floor at each end of the bridge, and rising at the center, to a height of about five feet; about twenty-two inches from the floor beam, a light rail ran horizontally from one part of the circular beam to the other. The plaintiff's intestate, a boy of between five and six years of age, while leaving the ferry-boat in company with his mother, fell through an opening in the guards upon the side of the bridge, and was drowned. There was nothing unusual in the construction of the bridge, and it had been used

for a long time for the purpose of landing passengers, without any accident such as that which happened to the intestate having occurred.

*Held,* that the evidence failed to show any negligence on the part of the defendant which would justify a recovery by the plaintiff. (BARNARD, P. J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages for the negligent killing of the plaintiff's intestate (his son), James M. Loftus, a boy aged six years and four months.

On the evening of July 3, 1878, the deceased, accompanied by his mother, who was carrying an infant in her arms, and also by Mrs. Ann Madden and her four children, whose ages ranged from fourteen years down, took passage upon defendant's ferry boat at Hamilton avenue, Brooklyn. The boat arrived at New York at twenty minutes to nine o'clock, and Mrs. Loftus and her party, having waited until the boat was securely fastened to the bridge and the chains were let down, passed from the boat to the bridge. The testimony is conflicting as to the order in which they landed— Mrs. Madden saying that Mrs. Loftus was in advance, the children next, and that she brought up the rear; while Mrs. Loftus says the children were in advance and both ladies were in the rear. Evidence was given by the plaintiff tending to show that as the party were proceeding up the bridge two boys, not of this party, came running rapidly off the boat, yelling loudly; that the little boy, Loftus, hearing the noise of rapid running and the yelling behind him, dodged to the right to avoid it, and in so doing lost his balance and fell off the side of the bridge into the water, and was drowned. The defendants had provided a floating bridge upon which to land their passengers. This bridge was about thirty-five feet in length. It was set in between two stationary piers, and was fastened at one end to the dock. The bridge did not fill the entire space between the docks, and there was an opening on each side, beginning at the land end and growing wider towards the water end of the bridge. About half way up the bridge, where the deceased fell in, this opening was about fourteen inches in width. This

opening at the side was to allow the bridge to sway when struck by an incoming boat, to lessen the shock and the wear and tear. upon the boat and landing, and to allow it to rise and fall with the tide. The bridge had a team way in the center and a way for foot passengers at each side. The guards at each side of the bridge were constructed as follows: a square beam eight inches in height ran along the floor; a circular beam, commencing at the floor at one end of the bridge and rising to about five feet in the center and dropping again to the floor at the other end, pressed this beam on the floor. About twenty-two inches above the top of the floor beam there was a light rail running horizontally from one part of the circular beam to the other. The circular beam was supported by upright beams six feet apart.

*Benjamin D. Silliman*, for the appellant.

*Barrett & Patterson*, for the respondent. The defendants were bound to exercise the utmost care and skill, which human ingenuity could suggest, to preserve their passengers from harm. (*Hegeman* v. *Western R. R.*, 13 N. Y., 9; *Brown* v. *Central R. R.*, 34 Id., 404; *Brown* v. *Central R. R.*, 18 Id., 408; *Maverick* v. *Eighth Avenue R. R.*, 36 Id., 378; *Angell on Carriers*, § 537, *a*.) It was their duty to provide a safe landing. (*Weston* v. *New York Elevated R. R.*, 73 N. Y., 595; *Hoffman* v. *New York Central & Hudson River R. R.*, 75 Id., 606; *Hulbert* v. *New York Central R. R.*, 40 Id., 145.) There being at the side of the passage-way for foot passengers upon this bridge an opening through which passengers might fall into the water and be drowned, it was the duty of defendant to sufficiently protect such opening by a safeguard or fence. (*Shearman and Redf. on Neg.*, §·508; *Beck* v. *Carter*, 68 N. Y., 283; *Rudway* v. *Briggs*, 37 Id., 256; *Pickard* v. *Smith*, 100 E. C. L., 470 [10 Com. B., N. S.]; *Chapman* v. *Rothwell*, 96 E. C. L., 168 [El., Bl. and El.]; *Barnes* v. *Ward*, 67 E. C. L., 392 [9 Man., Gr. & Scott]; *Clark* v. *Union Ferry Co.*, 35 N. Y., 485; *Wykoff* v. *Queens County Ferry Co.*, 25 Id., 32; *Chicago* v. *Major*, 18 Ill., 338; *Johnson* v. *Bruner*, 61 Penn. St., 58; *Indermauer* v. *Dames*, L. R., 1 C. P., 274; *S. C.*,

affirmed, L. R., 2 C. P., 311; *Caldwell* v. *New Jersey S. S. Co.*, 47 N. Y., 282; *Mullaney* v. *Spence*, 15 Abb. Pr. N. S., 318; *Hoffman* v. *New York Central R. R.*, 65 N. Y., 605; *Brown* v. *Mohawk R. R.*, How. App. Cases, 52; *Hulbert* v. *New York Central R. R.*, 40 N. Y., 145; *Simson* v. *Ind. G. O. Co.*, 8 L. R., C. P., 390; *Lax* v. *Darlington*, L. R., 5 Exch., 28; *Stratton* v. *Staples*, 59 Me., 94; *Brockway* v. *Lascalla*, 1 Edm., 138; *Leishman* v. *L. B. & S. C. Railway*, 23 L. T., N. S., 712; cited in Fisher's Digest, 1871, p. 242; *Ernst* v. *Hudson River R. R. Co*, 35 N. Y., 9.) The question here is not whether the guard was sufficient as to an adult, but whether it was adequate protection to a little child between two and three feet in height, and of corresponding weakness.     (*Sheridan* v. *R. & N. R. R.*, 37 N. Y., 39; 2 Wait Ac. & Def., 96, and cases; *Smith* v. *Wilson*, 31 How. Pr., 272.) The defendants are liable absolutely for all injuries to any person resulting from the maintenance of the dangerous opening adjacent to the traveled way.    A person making an excavation upon his own land contiguous or adjacent to a public highway, is absolutely liable to all persons injured thereby, irrespective of negligence, on the ground that such an excavation is a nuisance.   (*Temperance Hall* v. *Giles*, 33 N. J. Law, 260; *Barnes* v. *Ward*, 6 Man., Gr. & Scott, 9 Com. B., 67 E. C. L., 418; S. C., 14 Jur., 334; *Copland* v. *Hardingham*, 3 Camp., 398; *Jarvis* v. *Dean*, 3 Bingh. [11 E. C. L.], 447; *S. C.* affirmed, 11 J. B. Moore, 354.    See *Beck* v. *Carter*, 16 N. Y., 283; *Sexton* v. *Zett*, 44 Id., 430; *Creed* v. *Hartmann*, 29 Id., 591.)   A ferry is a public highway, subject only to the payment of the toll.   (Thompson on Highways, and cases cited, p. 14.)

GILBERT, J.:

We are of opinion that no proof of negligence on the part of the defendant was given.   Ferry companies are not insurers of the absolute safety of passengers, either while coming on board the ferryboats, or while going ashore therefrom, nor are they bound to guard against possible accidents which could not reasonably be foreseen. Their duty is to furnish accommodations for the receiving and landing of passengers which are reasonably sufficient for that pur-

pose, and for the protection of persons using the means provided, in a reasonable way. (*Blackman* v. *London, &c., R. Co.*, 17 W. B., 769; *Rigg* v. *Manchester, &c., R. Co.*, 12 Jur. N. S., 525; *Cornman* v. *Eastern Counties R. Co.*, 4 H. & N., 781; *Crafter* v. *Metropolitan R. Co.*, L. R., 1 C. P., 300; *Dougan* v. *Champlain Tr. C.*, 56 N. Y., 1; *Crocheron* v. *North Shore, &c. Ferry Co.*, Id., 656, reversing 1 N. Y. Sup'm Ct. [T. & C.] 446; *Cleveland* v. *New Jersey Steamboat Co.*, 68 N. Y., 306.) It is not enough, to make out a case of negligence, to suggest that additional precautions would have prevented the accident. It is always quite easy to do that after an accident has happened. But the question is, whether a prudent person, under all the circumstances involved, might reasonably be expected to foresee that the accident which happened might occur. We have no hesitation in giving a negative answer to that question in this case. Such an accident as that by which the deceased lost his life was quite beyond the scope of probability.

The deceased, a boy seven years old, in some way which is not satisfactorily explained, got through a space of from twenty to twenty-two inches wide in the railing of the landing float or bridge, fell into the water and was drowned. There was nothing unusual in the construction of the bridge or float. Such a bridge or float had been used for the purpose of landing passengers for a very long period, and had hitherto proved adequate and safe. No accident like that which happened to the deceased had ever occurred, although the number of passengers landed from the defendant's boats in some years exceeded forty millions. Surely the mere occurrence of an accident, such as had not before been known to the defendant, and which happened in such an extraordinary manner, is not evidence of negligence. As the cases cited show, the defendant was not bound to foresee and provide against such a casualty. We have examined the authorities to which we have been referred by the learned counsel for the plaintiff, but none of them conflict with the principles above stated.

Without considering the question of contributory negligence, we think the judgment and order denying a new trial should be reversed, and a new trial granted, with costs to abide the event.

BARNARD, P. J., dissenting :

It was part of the defendant's duty as a common carrier of passengers to provide a safe landing-place for them. In the case under consideration the defendant provided a bridge which rose and fell with the tide. Between the bridge and the stationary dock was a space sufficiently large to permit a child to get through, and the opening between the bridge and stationary dock was sufficiently large to permit a child to fall in the river. The protection along the bridge was insufficient. It was simply an outline. The plaintiff's son, a small boy of six and a half years of age, coming off from the boat, is jostled or shoved or escaped through the openings and was drowned. The bridge was not built to protect children of that age. In view of the crowd of passengers traveling by defendant's boats, including children of all ages, and of the rush from the boat, it should have been anticipated that an opening in the sides of the bridge was dangerous. The motion for a nonsuit was properly denied. There is nothing in the evidence calling for a decision that as matter of law the deceased boy was guilty of contributory negligence. It was a question for the jury. The age of the boy was proven, and his attendants and companions; how the accident occurred, and where, in reference to the bridge, and what was its cause. I do not see any omission of duty, either upon the part of the boy or his mother, in whose charge he was.

The judgment should be affirmed, with costs.

Present—BARNARD, P. J., GILBERT and DYKMAN, JJ.

Judgment and order denying new trial reversed, and new trial granted, costs to abide event.