It is urged, however, that, even if the plaintiff was not entitled to equitable relief, the court owed it the duty of determining the amount of damages which may have been sustained by reason of the breach of the contract. While it is true that a court of equity, having gained jurisdiction of a cause, will generally retain it for the purpose of disposing of the entire controversy, we find no authorities which make it the duty of a court to retain a cause for the exclusive purpose of determining damages, where it clearly appears that the plaintiff is not entitled to the equitable relief demanded. The defendants set up in their answer that the plaintiff had a complete remedy at law, thus bringing them within the rule laid down in Town of Mentz v. Cook, 108 N. Y. 504, 15 N. E. 541; and, if there were not sufficient facts alleged in the complaint to give the court jurisdiction in equity, then there could be no authority for retaining the case to determine the amount of the damages which the plaintiff may have sustained. The rule is that, if a court of equity has jurisdiction, and entertains the case, it will ordinarily retain it until the whole subject is disposed of. Taylor v. Taylor, 43 N. Y. 578, 584; Ostrander v. Weber, 114 N. Y. 95, 102, 21 N. E. 112. In the case at bar the court determined that it had no jurisdiction in equity, and refused to entertain it. Its incidental power of fixing the plaintiff's damages depended upon its having jurisdiction in equity, and, as this issue was raised by the pleadings, the court properly dismissed the complaint.

The judgment should be affirmed, with costs. All concur.

(41 App. Div. 218.)

LEYH v. NEWBURGH ELECTRIC RY. CO.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. CARRIERS—DEFECTIVE APPLIANCE—CURTAIN RODS—LIABILITY.

An open electric car was provided with curtains, at the bottom of which was an iron rod, with brass shoes on each end, which worked in a groove. On the day of a high wind, when the curtains were pulled down on the windward side, a shoe broke where it was inserted into the rod, and the end of the rod struck and injured plaintiff, a passenger. The break was clean, and showed no flaw. The car was built and the curtains put in by a firm of high standing in 1895, and the car had been used only during the summers of 1895 and 1896. Similar curtains were in general use on a great many other roads. No similar accident was shown, and there was evidence that none such had occurred on defendant's road. It was not shown that the rod had ever been examined. *Held*, that defendant is not liable.

2. SAME—DEGREE OF CARE.

An electric railway company is not bound to use the highest degree of care in respect to the curtain rods of its cars.

Woodward, J., dissenting.

Appeal from trial term, Kings county.

Action by Lena Leyh against the Newburgh Electric Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Jesse Johnson, for appellant.
Charles J. Patterson, for respondent.

GOODRICH, P. J. The plaintiff in June, 1896, was a passenger in an open car of the defendant, which operated a line of electric cars between Newburgh and Walden, a distance of 12 miles. The car in which the defendant rode was equipped with canvas curtains which worked up and down by a spring similar to those common in households. The bottom of the curtain was hemmed, and in the hem was a hollow iron pipe or rod, three-eighths or a half inch in diameter. At the ends of the rod were brass shoes or caps, which were fitted into the rod, and these shoes ran up and down in grooves in the sides of stanchions supporting the roof. On the day in question there was a high wind, and at the request of some of the passengers the conductor pulled down the curtains on the windward side. Just before the accident to the plaintiff the direction of the car route changed, bringing the wind more forcibly against the curtains. Soon after, the bottom of one of them became loose, and the curtain blew into the car; the end of the iron rod striking the plaintiff a violent blow on the head, and inflicting damage, for which she brought this action. The defendant moved to dismiss the complaint on the ground that there was no negligence on the part of the defendant, and that the company had exercised proper care in the equipment of the car and curtain. The motion was denied, and under the exception of the defendant the appeal comes before us. The only question argued by the appellant arises on the denial of this motion.

The doctrine is well established that a common carrier of passengers is bound to the very highest degree of care in the equipment of its road and certain of its appliances. This is conceded in the brief of the defendant's counsel, but he contends that as the danger to be guarded against decreases so does the degree of care decrease. He cites McGrell v. Building Co., 153 N. Y. 265, 47 N. E. 305, which was an action against the owner of a passenger elevator. The court said (pages 268, 269, 153 N. Y., and page 306, 47 N. E.):

"While it was the defendant's duty to provide a safe and suitable car, appliances, and other machinery for the operation of its elevator and for the accommodation of its passengers, and to exercise strict diligence in that respect, still the law did not impose upon the defendant the duty of providing for their absolute safety, so that they should encounter no possible danger or meet with no casualty in the use of the appliances provided"; citing cases.

The court also said (page 271, 153 N. Y., and page 307, 47 N. E.):

"It may be that, as to the machinery and appliances by which an elevator is moved and controlled in its ascent and descent, an owner is bound to use the utmost care as to any defect which would be liable to occasion great danger or loss of life, and that he is in that respect subject to the same rule that applies to a railroad company in regard to its roadbed, engines, and other similar machinery. But as to the surroundings and other structures forming a part of the elevator plant, where less danger is to be apprehended, we think the rule is less strict, and the doctrine of the cases cited applies. In the latter case the rule is satisfied with that degree of care which a reasonably prudent man would exercise. This distinction is considered in some of the cases to which we have already referred. The requirement of the greater degree of care is dependent not so much upon the actual apprehension of danger as upon

the consequences likely to result from a defect in the machinery and appliances. In cases where less serious results are to be expected, and in cases where danger is not to be apprehended if due and proper care is observed by the passenger, the owner is responsible only for the want of ordinary and reasonable care."

In commenting upon this doctrine the court cited with approval Cleveland v. Steamboat Co., 68 N. Y. 306, where it was said (page 310):

"A carrier of passengers is not bound to foresee and provide against casualties never before known, and not reasonably to be expected. [Citing cases.] Hence his duty is not to be estimated by what, after an accident, then first appears to be a proper precaution against a recurrence of it."

It has been repeatedly held by the court of appeals that the rule which holds common carriers of passengers to the use of the utmost possible care in discovering defects in their tracks and running machinery applies only to such appliances as would be likely to occasion danger and loss of life to the traveling public if defects existed therein. Palmer v. Pennsylvania Co., 111 N. Y. 488, 18 N. E. 859; Kelly v. Railway Co., 109 N. Y. 44, 15 N. E. 879; Palmer v. President, etc., 120 N. Y. 170, 24 N. E. 302. In the case last cited, the court (Judge Bradley writing) recognized the doctrine that a railroad company is not an insurer of the safety of its passengers, and is not required to use the same degree of care and watchfulness as to all portions of its machinery and appliances. The court held that the plaintiff had the burden of proving a state of facts from which it might be inferred that the injury was occasioned by the negligence of the defendant, and for that purpose it was made to appear that the severance of the train from the engine was caused by the breaking of the spindle bar on the forward end of the car next the engine. The court said:

"The same degree of care and watchfulness are not alike requisite to all of the various portions of the machinery and appliances. The apparent necessity for frequency of examination is somewhat dependent upon the liability to impairment, and the consequences which may be apprehended as the result of defective condition."

It is true that in this case it was held that the question was one of fact to be submitted to the jury, but this does not affect the principle announced by the court.

In the Kelly Case the plaintiff was injured in a fall occasioned by catching her dress on a snap hook used to hold down a car curtain operating in a manner similar to the one in use in the case at bar. The hook had been broken, but when or how did not appear. The court said:

"The hooks broke in no other way than by use, and, for aught that appears, this hook may have been broken by some person after the car started upon that trip. The defendant gave evidence showing that all the Coney Island cars were furnished with the same kind of curtains and hooks, and that there was no better way known of fastening the curtains; that its road had been operated for several years, and carried more than a million of passengers every year; and that such an accident had never before occurred."

It is true that in the case at bar no examination of the curtain rod was shown, but it is evident that no examination would have

disclosed an imperfection in the rod, as the break was clean, and showed no flaw.

With these doctrines in mind, let us refer to the evidence. It appears that the car had been built in 1895, and had been operated during the summers of 1895 and 1896, but not in the winter. It was built and the curtains put in by Jackson & Sharp, of Wilmington, which was proved to be a firm of high standing, and one of the leading car builders of the country. Similar curtains were in general use on a great many other roads. While these facts are not conclusive evidence that the carrier used requisite care, they show that care was used and precaution exercised. No previous accident of a similar character was proved by the plaintiff, and there was testimony tending to show that none such had occurred on the defendant's road. We do not consider this a case where the doctrine of "Res ipsa loquitur" applies, and it was therefore incumbent on the plaintiff to establish some negligence on the part of the defendant. There was a high wind at the time, the force of which apparently broke the shoe at the point where it was inserted in the rod, leaving a piece of the shoe on the rod; and the fracture was bright, showing no flaw. No external examination would have shown a defect in the material. Nor was there any other evidence as to the cause of the accident. It was not shown that the defendant or the builders of the car failed to equip it in a proper manner, or that the rod was defective, or that any defect would have been disclosed by examination, or that the fixture was broken by any cause except the violent wind. We cannot hold that a common carrier of passengers is bound to use the very highest degree of care in respect to the curtain rods of its cars. The defendant was bound to use reasonable care, adequate to the use of the appliance and to the probable results of its use. It was not bound to foresee and prevent such an unusual and not to be expected accident as that developed by the evidence. On the evidence, and following the authorities cited, we cannot do otherwise than hold that it was error to refuse to dismiss the complaint.

The judgment must be reversed. All concur, except BARTLETT, J., who concurs in result, and WOODWARD, J., who dissents.

WOODWARD, J. (dissenting). I do not concur in the result reached by my learned associate, and mainly because I do not agree with his application of the legal principles to the particular facts in the case. The accident was a novel one, but I am not aware that that is a reason against the maintenance of the action, though we find frequent statements in the cases cited to the effect that a carrier of passengers is not bound to provide against casualties never before known. In Jones v. Railroad Co., 23 App. Div. 141, 48 N. Y. Supp. 914, this court affirmed a judgment for the plaintiff where the accident was both novel and odd. A small electric light bulb, weighing but a few ounces, fell upon and injured a passenger, and the question of the defendant's responsibility was not raised on the appeal. Briefly stated, the plaintiff in the case at bar, a passenger in defendant's electric car, without negligence on her part was in-

jured by the breaking of a curtain rod which was unable to withstand the pressure of a strong wind. The edges of the break were bright, showing, as my learned associate says, no flaw; and he seems to conclude that as there was no flaw the rod was not defective. But weakness is a defect, and that the rod was unable to withstand the pressure of a strong wind is abundant evidence of weakness, and, to my mind, sufficient evidence of negligence to require a submission of the question to the jury. "Res ipsa loquitur." Kelly v. Railway Co., 109 N. Y. 44, 15 N. E. 879, is the only case which presents any difficulty; but it was there held that the defendant had done all it could or was bound to do, and the evidence showed that frequent inspections were made. There was no evidence whatever as to the cause of the break. In the present case there is no evidence of any inspection, and abundant evidence as to the cause of the break. The prevailing opinion quotes Judge Bradley, in the Palmer Case, 120 N. Y. 170, 24 N. E. 302, to show that the degree of care as to different portions of the machinery and appurtenances varies, and also to show that the necessity of examination is somewhat dependent upon liability to impairment. The opinion is an interesting one, and, to show that the question is one of fact for the jury, I continue the quotation, beginning where the prevailing opinion terminates it (page 176, 120 N. Y., and page 304, 24 N. E.):

"But whether the system [of inspection] and the manner of its execution are all that may be required of the carrier cannot be measured by any rule of law to be applied by the court. It must, in view of the circumstances appearing by the evidence, be one of fact for the jury to determine upon proper instructions relating to the degree of care imposed upon the company; and while it is true that the question of fact so presented is somewhat speculative, in the sense that it is not measured by any definite rule, it must nevertheless become a matter of judgment, to be expressed by the jury and founded upon the evidence."

It may be true that as to minor portions of a vehicle the carrier of passengers is not to be held to the highest degree of care; but I do not think we may say, as a matter of law, that a portion of the side of a vehicle, designed to protect passengers from the weather, is such a minor detail as to relieve the carrier from the burden of proving that it was not at fault if such a portion of the side is shown to have been too weak to withstand the wind, and as a direct result of such weakness a passenger in the exercise of due care is injured. The judgment should be affirmed.