(64 App. Div. 490.)

### FLINN v. WORLD'S DISPENSARY MEDICAL ASS'N et al.

(Supreme Court, Appellate Division, Second Department. October 11, 1901.)

1. PERSONAL INJURIES—AGENT OF DEFENDANT—SCOPE OF EMPLOYMENT.

The defendant, an electrical appliance company, furnished a motor and rheostat to plaintiff's employer, a newspaper company, for the operation of its presses. Defendant sent an agent to repair the rheostat. After completing the repairs, and while waiting for a train out of the city, the newspaper company's press foreman told the agent that one of the presses was charged with electricity. The foreman procured a wire, and he and the agent connected the press with a water pipe, thereby discharging it. As they did so, the press moved, injuring plaintiff's hand. *Held*, that defendant's agent was not acting within the scope of his employment, so as to render defendant liable.

2. SAME—PROBABLE CONSEQUENCES—LIABILITY.

The agent of defendant, an electrical appliance company, assisted the foreman of plaintiff's employer, a newspaper company, to relieve one of its presses of a charge of electricity by connecting it with a water pipe. As the connection was established, the press moved, injuring plaintiff's hand. The agent and another expert testified that such a consequence was unheard of, and contrary to common experience and the usual course of events. *Held*, that the evidence failed to show that the accident might have been reasonably anticipated by a man of reasonable prudence, so as to sustain a verdict for plaintiff.

Hirschberg, J., dissenting.

Appeal from trial term, Kings county.

Action by Henry M. Flinn against the World's Dispensary Medical Association and the American Engine Company. From a judgment in favor of plaintiff and an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Frederic A. Ward, for appellants.
David Murray, for respondent.

SEWELL, J. The judgment in this action awards to the plaintiff $10,000 as damages for personal injuries received by him while in the employ of the New York Times Company by the unexpected starting of a printing press. There is practically no dispute in respect to the facts, and the controversy in this case is reduced to the inquiry whether the defendant is responsible under the doctrine of respondeat superior for the alleged negligence of the defendant's servant, and whether a man of reasonable prudence and foresight, under the circumstances of this case, might reasonably have antici-

pated the accident. It appears that in July, 1898, the New York Times Company entered into an agreement with the defendant the World's Dispensary Medical Association to publish certain advertisements in consideration of an electrical motor and rheostat to be manufactured and delivered at Bound Brook, N. Y., by the defendant corporation the American Engine Company; the engine company to send a man to superintend the installation of the machines. ·The engine company manufactured and delivered the motor and rheostat, and sent Urbin and Porter, two experts in their employ, to install them. The motor was put in place by Urbin on or about the 7th day of October, and about the same time the rheostat was installed by Porter. The Times Company accepted the ·motor and rheostat about the 7th day of October, and used them to run its presses from the 10th to the 19th of October, when Porter was sent to repair and readjust the rheostat, which consisted of a series of resistance wires for the purpose of controlling and regulating the flow of electricity to the motor. He had no instructions to do anything to the motor or press, and testified that he did nothing to them. Porter commenced work about 9 o'clock in the morning of the 19th day of October, the day of the accident, and worked until midnight, putting an additional row of segments around the rheostat. After finishing the work, Porter packed up his tools to go home. While waiting in the press room for the next train, which left New York for Bound Brook at 4 o'clock in the morning, Linkfield, the foreman of the press room, the plaintiff, and other press men entered and went about their usual work, taking out, washing, and putting in the rollers, and drying the muslin of the cylinders of the press. Soon after, one of the men told Linkfield that the press was charged with electricity, and Linkfield asked Porter to ground the press, saying that the electricity in the press interfered with the men working on the press, and that it was disagreeable to them. Porter testified that he tested the charge, and found that it was not "enough to hurt a person, just simply a sensation of pricking on the fingers." Linkfield then sent for Patton, the motorman, who procured a wire about a foot in length, and, with Porter, went into a pit which was directly under the press. They connected the water pipe with the shaft of the press, a flash followed, and the press moved, or, as the plaintiff says, "jumped ahead about four or five inches." The plaintiff was at the time engaged in putting muslin on the cylinders over which the paper passes, and his hand was drawn between them. The injury sustained by the plaintiff was a serious one, as it destroyed the use of his right hand, and compelled him to undergo a severe surgical operation.

There is no conflict or doubt in respect to the fact that Porter was in the employ of the American Engine Company, but the question is whether, at the time of the accident, he was doing the defendant's work. To render one liable for the negligence of another, the relation of master and servant or principal and agent must exist in respect to the transaction out of which the injury arose. Stevens v. Armstrong, 6 N. Y. 435; King v. Railroad Co., 66 N. Y. 181, 23 Am. Rep. 37. Servants while employed and paid by one person

may, nevertheless, be ad hoc the servant of another in a particular transaction, and that, too, when their general employer is interested in the work.

In Higgins v. Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, the contractor had the right to use the elevator, and for that purpose could have employed his own servant. Instead of doing so, he called upon a general servant of the owner of the building, whose duty it was to conduct the elevator for passengers, to operate the elevator so that the mason in the service of the contractor could use it as a platform upon which to stand while doing his work. The conductor, having suspended carrying passengers, operated the elevator for the mason, and while so engaged the mason was injured. through the conductor's negligence. The court then said:

"Now, does the fact that Algar, who was guilty of the negligent act that produced the injury, was in the general employ and pay of the defendant, make it liable for the result of this accident? I think not, and for the reason that the conductor, while moving the elevator up and down as directed by the plaintiff, was not engaged in the defendant's work, but in the work of the contractor. * * * Beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master. And if the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and an act of the servant during such interval is not to be attributed to the master. Here the relation of master and servant between the conductor of the elevator and the defendant was suspended during the time that he was doing the work of the contractor in moving the plaintiff. up and down in the shaft."

The case of Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285, is also similar to this. There it was a part of the contract that the manufacturers of fireworks should send a man to assist in handling and exploding the pieces sold. The defendants sent one of their men and a boy to assist him. A member of the committee directed the boy to discharge some rockets. A rocket discharged by the boy struck and injured the plaintiff. It was held that, assuming there was negligence on the part of the boy, he was not at the time acting as a servant of the defendants, and they were not liable. The court said:

"The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the time and in respect to the very transaction out of which the injury arose. Thorpe v. Railroad Co., 76 N. Y. 406, 32 Am. Rep. 325; Dwinelle v. Same, 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611; Railroad Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Wood v. Cobb, 13 Allen, 58; Kimball v. Cushman, 103 Mass. 194, 4 Am. Rep. 528; Ward v. Fibre Co., 154 Mass. 419, 28 N. E. 299."

In Smith v. Railroad Co., 78 Hun, 524, 29 N. Y. Supp. 540, a station agent placed two torpedoes upon the track under one of the freight cars, and then ran back to the station house. When the wheels of the freight car passed over the torpedoes, an explosion occurred, causing several fragments to pierce plaintiff's leg. Judge Haight, in his opinion, said:

"If by doing what he did he went outside of his employment in order to effect a purpose of his own in exploding the torpedoes for his own amusement, and not for the purpose of signaling the train, then the company would not be liable."

In Cavanagh v. Dinsmore, 12 Hun, 465, a servant in the employ of the defendant as driver of truck turned off his course at the request of a third party as a personal favor to the latter, and while so off duty negligently ran over and killed the plaintiff's intestate. It was held that the driver was not acting in the business of his master at the time of the accident, and the latter was not liable for the injuries occasioned by his act. The language of that case has direct application to the case in hand,—that the departure of the driver from the ordinary route for the purpose of doing a favor to another was clearly an unauthorized deviation, and not within the scope of his duty to his employer. In Quinn v. Power, 17 Hun, 102, the defendant was the owner of a ferryboat run by his employer between the city of Hudson and the village of Athens. The pilot of the boat, as a favor, took from the dock at Athens a man who had been left by a tow which had landed there, and was then continuing its way up the river. Through the negligence of those in charge of the ferryboat, she collided with one of the canalboats, and the plaintiff's intestate was drowned. The court held that the employés of the ferryboat had, without authority, departed from the business of the defendant; that he was not responsible for any negligent acts.

This case cannot be distinguished from these and other cases which might be cited in vindication of the well-settled principle that the master is not liable for injuries sustained by the negligence of his servant while engaged in an unauthorized act beyond the scope and duties of his employment. The fact proved, and not disputed, was that Porter was sent upon this occasion only to repair the rheostat. There is not a shadow of evidence that he was authorized or directed to work upon, or in any manner interfere with, the motor or press. It is not claimed that he was incompetent, or that the motor or rheostat was not properly connected. It is apparent that the electricity in the press was due to defective insulation somewhere, but there is nothing in the case to indicate that the motor or rheostat was the cause, beyond the bare fact that the press was charged. It is possible that they had something to do with it. It is equally possible that they did not. There is not a particle of proof that they did. The work of grounding or discharging the electricity from the press was not that of the defendant. That was not done in the performance of any duty imposed by the contract, or any act authorized by it, and was not the natural and necessary consequence of anything which the defendant had ordered or directed to be done. Porter had finished the particular work he was sent there to do, and was waiting for a train to take him home, when he was requested by the foreman of the Times Company to do an act outside of his employment and his master's business, to accomplish a purpose foreign to it. It is clear that the relation of master and servant between Porter and the engine company was suspended

during the time he was doing the work for the Times Company at the request of its foreman, and for that reason the plaintiff should fail, and the motion for a nonsuit should have been granted.

If, however, it be conceded that Porter was acting within the scope of his authority at the time of the accident, the defendant merely rested under the general duty imposed upon all men to abstain from injuring another intentionally or negligently.  Before the plaintiff could charge the defendant with negligence in discharging the press by connecting it with the water pipe, he should have furnished some proof tending to show that the accident could have been reasonably anticipated.  There is no fact in proof from which it can be said that such an accident was reasonably to be expected, or which permits the inference that Porter ought to have foreseen that such an accident was possible.  So far as appears in the evidence, an accident of the nature proved had never happened before. Plaintiff's witness Porter, as well as defendant's witness Urbin, the only experts sworn, testified that they had never known or heard of a similar accident; that it was contrary to common experience and the usual course of events.  It is a well-settled proposition of law that a party is not bound to foresee and provide against a casualty never before known, and reasonably not to be expected; hence his duty is not to be estimated and determined by what after the accident then first appears to be a proper precaution against a recurrence of it.   Bowen v. Railroad Co., 18 N. Y. 408, 72 Am. Dec. 529; Dougan v. Transportation Co., 56 N. Y. 1; Jex v. Straus, 122 N. Y. 293, 25 N. E. 478.   If the result is of such a character that reasonable prudence and foresight would not have forecast it happening as a consequence of the act, then it may not be considered as a proximate cause.   Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009, and authorities cited; Saverio-Cella v. Railroad Co., 55 App. Div. 98, 66 N. Y. Supp. 1021.   Viewing the evidence in the light most favorable to the plaintiff, we think that the movement of the press was such an extraordinary and unheard-of circumstance that the failure to foresee and provide against it cannot, in any fair or proper view of the subject, be called negligence.   Cleveland v. Steamboat Co., 66 N. Y. 306; Loftus v. Ferry Co., 84 N. Y. 455, 38 Am. Rep. 533; Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522; Lafflin v. Railroad Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; Frobisher v. Transportation Co., 151 N. Y. 431, 45 N. E. 839; McGrell v. Building Co., 153 N. Y. 265, 47 N. E. 305.

The judgment and order denying motion for a new trial should be reversed, and a new trial granted; costs to abide the event.   All concur, except HIRSCHBERG, J., who dissents.