PETER DI BIASE, an Infant, by ANTONIO DI BIASE, His Guardian ad Litem, Respondent, v. EWART & LAKE, INC., Appellant.

Fourth Department, March 5, 1930.

*W. Earle Costello*, for the appellant.

*Edwin J. Carpenter*, for the respondent.

EDGCOMB, J. On April 28, 1927, the plaintiff, a lad four years and three months old, lost his eye while in the mill of the defendant at Groveland, N. Y., under most exceptional circumstances. A Livingston county jury has awarded him $3,000 for such injury. We are called upon to determine whether there is any evidence in the record to sustain the verdict.

Plaintiff's mother was employed by the defendant, along with other women, to look over and sort beans. Defendant had given its consent that these women might bring their children along with them when they came to work, if there was no one at home with whom they could be left. In compliance with such permission, the plaintiff, on the day in question, accompanied his mother to defendant's mill. Other children were also present. At the close of the day, the mother, together with the plaintiff, went to the weighing room, where the beans which she had sorted were to be weighed so that her wages might be determined. While waiting for this to be done, the boy, who had been roaming about the room, came running back to his parent, holding his hand over his eye, and it was discovered that that organ had been punctured by some sharp instrument. The lad was backward in talking, and could not tell what had happened. The mother was permitted to testify that the boy led her over to a burlap bag, containing 100 pounds of beans, which stood on the floor nearby, and that a steel bagging needle, some six inches long, was hanging at the end of the twine which had been used to sew up the bag. The mother described

the motions which the boy made, which indicated that he had pulled the needle out of the bag and stuck it in his eye. No one saw the accident, but it was assumed on the trial that it happened in the way claimed by the mother, and the case was tried on that theory.

Just before this occurrence, an employee of the defendant had been engaged in sewing up this bag. Before he had finished his job, he was temporarily called to another part of the building, and left the needle stuck in the bag. The boy had apparently pulled it out, and inflicted this injury on himself.

Assuming, for the purposes of this appeal, that there was sufficient evidence to warrant the court in holding that the accident happened in the manner claimed by the plaintiff, we think that the evidence fails to show that the defendant was guilty of any actionable negligence which caused this regrettable accident.

It may be assumed that the plaintiff was in defendant's mill by the latter's implied, if not by its express invitation, and that he was not a trespasser or a licensee, but an invitee. (*Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86.)

The owner of premises is bound to use reasonable care and prudence, commensurate with the hazard to be apprehended, to keep his premises in such a condition that those who go thereon at his invitation, whether adults or infants, shall not unnecessarily or unreasonably be exposed to danger. He is liable only for injuries resulting from a breach of such duty. He is not an insurer of the safety of those whom he invites to visit his property. (*Flynn* v. *Central R. R. Co.*, 142 N. Y. 439; *Larkin* v. *O' Neill*, 119 id. 225; *Hart* v. *Grennell*, 122 id. 371; *Larmore* v. *Crown Point Iron Co.*, 101 id. 391.)

Defendant was not required to guard against remote or improbable harm to those lawfully visiting its mill. To hold the appellant liable in this case, the injury which the plaintiff received must have resulted so directly from the leaving of this needle in the bag, within reach of the child, that common everyday experience would indicate that damage could reasonably be expected to follow such act. (*Beickert* v. *G. M. Laboratories*, 242 N. Y. 168; *Perry* v. *Rochester Lime Co.*, 219 id. 60; *Hall* v. *New York Telephone Co.*, 214 id. 49; *Jex* v. *Straus*, 122 id. 293; *Flaherty* v. *Metro Stations, Inc.*, 202 App. Div. 583; affd., 235 N. Y. 605; *Babcock* v. *Fitzpatrick*, 221 App. Div. 638; affd., 248 N. Y. 608; *Beetz* v. *City of Brooklyn*, 10 App. Div. 382; *Fitzgerald* v. *Rodgers*, 58 id. 298; *Saverio-Cella* v. *Brooklyn Union R. R. Co.*, 55 id. 98; *Horan* v. *Watertown*, 217 Mass. 185; *Van Leet* v. *Kilmer*, 252 N. Y. 454; *Palsgraf* v. *Long Island R. R. Co.*, 248 id. 339.)

In determining just what duty this defendant owed the plaintiff,

we must take into consideration the instincts, propensities and proclivities of a child of plaintiff's tender years, his lack of appreciation of danger, and his consequent indiscretion. It is very true that a greater duty rested upon the defendant to protect the plaintiff from danger than would be required of it in the case of an adult.

It cannot be said that this needle is an instrument which in and of itself is inherently dangerous. There is nothing hidden or latent about it which could cause injury. It is not a trap.· It is not a hazardous agency like gunpowder, dynamite or nitroglycerine. Almost any article which is misused may become dangerous. A pencil, pen or a letter opener, lying on a table in one's home or on a desk in an office, could easily cause injury or death, if improperly used, and yet none of these articles could be said to be an object beset with danger.

We do not think that it can be said that the defendant should have anticipated that an accident, even to a young child, would have occurred if this needle was left stuck in this bag of beans.

It must be remembered that defendant's duty is to be determined in the light of common experience before this accident, and not by that which afterwards appears, for the first time, to be a proper precaution to take against its recurrence. Wisdom after the event is easily acquired. (*Bowen* v. *N. Y. C. R. R. Co.*, 18 N. Y. 408; *Cleveland* v. *N. J. Steamboat Co.*, 68 id. 306, 310; *Flinn* v. *World's Dispensary Med. Assn.*, 64 App. Div. 490, 496.) Could it be said that a housewife, who has invited her neighbor's babe to play with her own child, and who, when she had been temporarily called from the room where the children were playing, had left a knitting or crochet needle, stuck in a ball of yarn, on a chair or table within easy reach of the children, should have anticipated that her young guest would be attracted by the needle, and would stick it in its eye? Could the mother be said to be negligent in such a case? Must one be expected to anticipate that every small child who enters his home or office will pick up a highly colored pencil, or a pair of bright shears, or an attractive letter opener, which may be lying on a desk or table, and inflict some injury on itself, unless such articles are put beyond the reach of the small visitor? To ask these questions is but to answer them. I can see no distinction between such a situation and the one now before us.

The similarity of the facts in the cases above cited, where it has been held that the defendants were not called upon to anticipate resulting danger from their acts or omissions, with those of the instant case, is very striking.

In *Beickert* v. *G. M. Laboratories* (*supra*) the defendant attempted to burn a quantity of film in a vacant lot near its place of business.

Small fragments escaped into the air and settled down on the ground, and were left there. Plaintiff, a child of tender years, picked up and lighted some of these pieces, and was injured. Held, that common experience would fail to indicate that such an accident would reasonably be expected to result from defendant's act.

In *Perry* v. *Rochester Lime Co.* (*supra*) the defendant stored nitroglycerine caps in a chest in a public place in the city of Rochester, in violation of the law. Some of the boxes were carried away by boys, and, while being handled by the lads, exploded and killed the plaintiff, a lad eight years of age, who was standing nearby. It was held that this unfortunate result could not be said to be within the reach of defendant's sight or knowledge when it left these caps unlocked and unguarded in a public place.

In *Hall* v. *New York Telephone Co.* (*supra*) defendant's servants left a bottle of denatured alcohol standing by the roadside. Two children took the bottle home, and poured its contents on the grass. One of them set fire to it, and the other was burned. Held, that the accident was not the natural or probable consequence of the act of the servant in leaving the alcohol on the highway.

In *Flaherty* v. *Metro Stations, Inc.* (*supra*) a judgment for the plaintiff was reversed and the complaint dismissed in an action brought by a boy nine years of age to recover for the alleged negligence of the defendant in leaving gasoline in an open milk can in a vacant lot where children were in the habit of congregating, and where two boys threw the gasoline on each other's clothing and onto a bonfire, and plaintiff was burned. Defendant's superintendent, in charge of its tanks, knew, or should have known, that children were in the habit of playing about this spot.

In *Beetz* v. *City of Brooklyn* (*supra*) quicklime was left on a portion of one of the public streets in the city of Brooklyn, with the consent of the municipality. The plaintiff, together with other lads of his own age, was playing about the barrels when one of them gathered up a quantity of the lime and carried it into the adjoining vacant lot, where it was placed in a can and water poured over it, with the result that it blew into plaintiff's face and destroyed his eyes. It was held that no liability attached to the defendant, because it was only liable for the natural and probable consequences of its wrongful act or omission, and that the result was of such a character that reasonable prudence and foresight would not forecast its happening as a consequence of leaving the lime in the street.

In *Fitzgerald* v. *Rodgers* (*supra*) a child was injured while playing with a winch left by a city contractor in a projected street. It was held that the situation was not of such a character as to lead the defendant to believe that, in the ordinary course of affairs, a child playing with a winch would be injured.

In *Babcock* v. *Fitzpatrick* (*supra*) a box of dynamite caps, which the defendant had placed under the porch of a nearby house, were discoverd by a lad, and carried away and distributed among his companions. While attempting to explode one of these caps, the plaintiff was injured. It was held that, even if the storage of the caps at the place in question constituted an attractive nuisance, it was not the proximate cause of plaintiff's injury, because the agency which brought about the explosion was something which the defendant could not reasonably have been called upon to apprehend.

In *Horan* v. *Watertown* (*supra*) it was held that the defendant was not liable for personal injuries caused by the explosion of dynamite, taken by children from an unlocked and unguarded tool chest left by defendant's employees on a public highway, which the boys had thrown on a bonfire in an adjacent field, and which resulted in injury to the plaintiff, because, it was said, the defendant could not have foreseen, in the natural course of events, that the plaintiff would have been injured in this manner from the mere leaving of the dynamite so easily accessible to the public.

It is true that in many of these cases the injured party was a trespasser or a bare licensee, in which case the measure of the defendant's duty was to refrain from inflicting wanton or willful injury upon the plaintiff. Nevertheless, all of these cases hold that the defendant was not bound to realize beforehand that the injury which occurred would, in the natural course of events, follow the defendant's act or omission.

There is nothing about a needle which would particularly fascinate a child. It is entirely different from moving wheels or machinery, both of which have a natural attraction, not only for children, but for some adults. While this was a bright, steel needle, its shining surface does not make it especially alluring. It must be remembered that a portion of it, at least, was hidden in the bag of beans when the infant discovered it. It is difficult to conceive how a needle is any more attractive to a child than hundreds of articles which are found in every home, and which, if misused, would cause serious injury. The pieces of film, the bottle of denatured alcohol, the gasoline and the winch which were the subjects of discussion in the *Beickert, Flaherty, Hall* and *Fitzgerald Cases* (*supra*) are certainly as inviting to a child as a steel bagging needle.

The facts in the instant case are clearly distinguishable from those in *Dorsey* v. *Chautauqua Institution* (203 App. Div. 251) and *Sarapin* v. *S. & S. Corrugated Paper Machinery Co., Inc.* (209 id. 377), relied upon by the plaintiff. In the *Dorsey* case plaintiff was on defendant's property by its invitation, and was permitted to run and play about open vats separated by concrete walls two feet

thick, and while so playing fell in and was drowned. A situation was there disclosed which would indicate to any one who gave the matter a moment's thought that, if children were allowed to run so near an open vat, they would be apt to slip and fall in the unguarded opening.

In the *Sarapin Case* (*supra*) defendant left a machine in the back yard of a tenement house in which the plaintiff lived, and where he had a perfect right to play. It was of such a height and construction as to be especially alluring to children, and on its top was a cog wheel about eighteen inches in diameter, which, when in motion, would not only attract the attention and interest of a child, but would be a source of danger to him; that is a far different situation than existed in the case at bar.

In our opinion the evidence fails to show that the defendant violated any duty which it owed to the plaintiff in the premises. That being so, the judgment should be reversed and the complaint dismissed.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law, with costs, and complaint dismissed, with costs.