JOSEPHINE B. HIGGINS, as Administratrix of the Estate of ROBERT R. HIGGINS, Deceased, Appellant, *v.* GEORGE MASON, JR., Respondent.

(Argued October 3, 1930; decided November 25, 1930.)

*Lawrence B. McKelvey* and *Wyllys A. Dunham* for appellant. Defendant was guilty of actionable negligence. He did not exercise that degree of care required of him. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Meirs* v. *Koch Brewery*, 229 N. Y. 10; *Clark* v. *Traver*, 205 App. Div. 206; 237 N. Y. 544; *Grimshaw* v. *Lake Shore Ry. Co.*, 205 N. Y. 371; *Lowell* v. *Williams*, 183 App. Div. 701; 228 N. Y. 592; *Adams* v. *Tozer*, 163 App. Div. 751; *Kane* v. *Sperry*, 175 App. Div. 948; *Royal Indemnity Co.* v. *P. & W. Refining Co.*, 98 Misc. Rep. 631; *Marino* v. *Farrell*, 201 App. Div. 367; *Patnode* v. *Foote*, 153 App. Div. 494; *Birch* v. *City of New York*, 190 N. Y. 397.)

*Clarence B. Kilmer, W. P. Butler* and *C. L. Hoey* for respondent. Deceased was a licensee and his representative can recover only for active negligence on defendant's part. (*Patnode* v. *Foote,* 153 App. Div. 494; *Pigeon* v. *Lane,* 80 Conn. 237; *O'Shea* v. *Lavoy,* 175 Wis. 456; *Carroll* v. *City of Yonkers,* 193 App. Div. 655.)

KELLOGG, J. The plaintiff, Josephine B. Higgins, her husband, Robert Higgins, and the defendant's wife, Grace Mason, were the guests of the defendant, George Mason, Jr., on an automobile trip from Corinth, N. Y., to Gravesville, a village near Utica, N. Y., and return, and rode with the defendant in an automobile owned and furnished by him. On the return journey, when about twenty miles from Corinth, the car, then driven by the plaintiff, Josephine B. Higgins, suddenly turned to the left, crossed the road on a sharp angle, entered the left-hand ditch and overturned. The occurrence caused the death of Robert Higgins. The plaintiff brings this action, as his administratrix, to recover damages for the death, charging that it was caused by the defendant's negligence.

Shortly after the occurrence, a piece of rounded metal, three-fourths of an inch in diameter and one and a half inches long, was found near the center of the highway. It proved to be the upper end of a " spindle pin " or " pivot pin," a metal bolt or pin about seven inches long, which had served to attach the right-hand forward running wheel to the frame of the car, and furnished a pivot upon which there might be made to turn, by the steering mechanism, the running wheel, a short axle, upon which it revolved, and the spindle body, to which the axle was firmly attached. The pin, when in place, passed through the upper and lower arms of the stationary axle of the car, between which the spindle body was made fast, and likewise through the spindle body. With the pin entirely gone, the spindle body and running wheel would have dropped away from the car. With the pin in

place, but broken, the upper part might rise with the motion of the car, thereby permitting the lower part, secured only at the bottom, as well as the spindle body and its attachments, to bend outward, in turn causing the running wheel to " toe in," whereby the direct forward motion of the car would be affected. The pin, however, while the upper part rested firmly on the lower, might have served to keep the running wheel in alignment, and the car motion true. At times a break in the pin might cause a shimmying in the steering wheel; while at other times this would not be noticeable. A car might travel a great distance with a broken pin without overturning. In this instance the right forward running wheel and spindle housing were found to be detached from the axle arms after the accident had occurred. It could reasonably be found that a broken spindle pin was the cause, not the result, of the overturning of the car.

In our sister States, where the rule generally prevails that an owner in operating an automobile owes to a guest the duty of ordinary care, the application of the rule has been expressly limited to instances where the violation of an obligation imposed, " not to increase the danger to the guest or to create any new danger," has been the subject of the claimed omission. (*Beard* v. *Klusmeier*, 158 Ky. 153; *Perkins* v. *Galloway*, 194 Ala. 265; *Spring* v. *McCabe*, 200 Pac. Rep. 41 [Cal.]; *Bauer* v. *Griess*, 105 Neb. 381; *Fitzjarrell* v. *Boyd*, 123 Md. 497; *Tennessee Central R. R. Co.* v. *Vanhoy*, 143 Tenn. 312; *Dickerson* v. *Connecticut Co.*, 98 Conn. 87; *Hemington* v. *Hemington*, 221 Mich. 206; *Munson* v. *Rupker*, 148 N. E. Rep. 169 [Ind. App.]; *Moorefield* v. *Lewis*, 96 W. Va. 112; *Mitchell* v. *Raymond*, 181 Wis. 591.) It is true that in Massachusetts and Georgia the host is liable to the guest only where gross negligence is found (*Massaletti* v. *Fitzroy*, 228 Mass. 487; *Burke* v. *Cook*, 246 Mass. 518; *Epps* v. *Parish*, 26 Ga. App. 399); and in New Jersey only where the host has been guilty of willful negligence. (*Faggioni*

v. *Weiss*, 99 N. J. L. 157.) These decisions, however, are opposed to the general current of authority, and to the rule laid down in a case which came to this court (*Clark* v. *Traver*, 205 App. Div. 206; 237 N. Y. 544), where it was said: " It is well established that the duty which the defendant owed to the plaintiff as a licensee was to exercise ordinary and reasonable care, not to increase the danger of the plaintiff while thus in defendant's car, or to create any new danger." In Connecticut, where the standard of " active negligence " prevails, it has been said that fast, improper or inattentive driving would constitute such negligence. (*Pigeon* v. *Lane*, 80 Conn. 237.) It would seem, therefore, that, in respect to all acts or omissions, strictly relating to the operation of an automobile, the duty of the host toward his guests is to exercise ordinary care for their protection. The limitation, placed by the authorities upon the rule of ordinary care, that it applies in instances only where there is involved an increase of an existing hazard, or the creation of a new peril, is significant in its implication that as to existing risks, such as might inhere in the mechanism of the car or the host's lack of mechanical knowledge, the rule is inapplicable.

In *Patnode* v. *Foote* (153 App. Div. 494), a case frequently cited with approval (as in *Beard* v. *Klusmeier*, *supra*, and *Cleary* v. *Eckart*, 191 Wis. 114), the duty of a host, in reference to the condition of the vehicle furnished by him for the entertainment of his guest, was stated to be as follows: " Under the above principles, therefore, one who invites another to ride is not bound to furnish a sound vehicle or a safe horse." The case was cited in *Dickerson* v. *Connecticut Co.* (*supra*, p. 90) as authority for this proposition: " The guest on entering the automobile takes it and the driver as they then are, and accepts the dangers incident to that mode of conveyance." In many of the authorities the relationship between an automobile owner and a gratuitous passenger is likened

to the relationship between a landowner and his guest, and the obligations arising therefrom are said to be the same. (*Patnode* v. *Foote, supra; Greenfield* v. *Miller,* 173 Wis. 184; *Mitchell* v. *Raymond, supra.*) The guest " must take such premises or vehicle as he finds them and as it pleases the owner, in the exercise of his right of dominion over his own property, to maintain the same." (*Mitchell* v. *Raymond, supra,* p. 599.)

The rule that a guest, in accepting an invitation to his host's premises for purposes of entertainment, or an invitation to drive, for similar purposes, accepts the premises, the vehicle, or the host, as they are, is subject to the proviso that " such owner does not fail in the duty of informing or warning the guest of that which must be considered a trap or concealed defect or by no act of his creates a new danger." (*Mitchell* v. *Raymond, supra,* p. 599.) " If he should have knowledge that the vehicle was unfit for transportation or the horse unsafe to drive, another element would arise, and he might be liable for recklessly inducing another to enter upon danger." (*Patnode* v. *Foote, supra.*) The guest " cannot hold the owner or occupant to any duty of care or diligence beyond giving notice of any danger of which he is aware." (Bigelow on Torts [8th ed.], p. 161.) The duty of an owner of premises to a gratuitous licensee has been clearly stated in the Restatement of the Law of Torts, Tentative Draft No. 4, American Law Institute. The owner is liable for injuries to guests caused by a defective condition of the premises only if he " knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk " and fails to use reasonable care to make the premises safe or " to warn them of the condition and the risk involved therein." (§ 212.) If a host invites a guest to dine with him at his country place and the road to his house has been dangerously undermined, the host is not liable to his guest for an injury caused by

a collapse of the road, if he did not have actual knowledge that the road was undermined, although he " could have discovered it had he paid attention to the condition of his road." (Id. Illustrations, p. 165.)

Under the authorities, the defendant host, George Mason, was not liable for the death of his guest, Robert Higgins, because of a mechanical defect in his car, although Mason, by inspection, might have discovered the fault, since Higgins, in accepting the invitation to ride, must have taken the car as he found it and no duty of inspection rested upon Mason. Mason would be liable only if he *knew* of the dangerous condition; *realized* that it involved an unreasonable risk; *believed* that the guests would not discover the condition or realize the risk; and failed to warn them of the condition and the risk involved. Does the record show that these conditions, upon which liability depends, have been complied with?

On the return journey, near Utica, seventy miles before its arrival at the place of the accident, the automobile, driven by the defendant Mason, had taken a " swerve " or " slew " from the right side to the left edge of the macadam roadway. All concede that it had been raining and the road was wet. The defendant Mason says that the car slewed because he applied the brakes to the car while on a slippery road. There is testimony to the effect that Mason, several days after the accident, said in reference to the swerve that " he knew there was something wrong with the car but he did not know what; " that he " thought there was something wrong " but thought they " would be able to get home; " that Grace Mason, his wife, while driving after the swerve, called out to him, " Papa, there is something wrong with the car." This evidence may be sufficient to justify the inference that the spindle pin, at or prior to the " swerve," had broken, and that the break caused the swerve. It is insufficient, we think, to warrant the infer-

ence that there was actual knowledge on Mason's part that the car was in a dangerous condition, or actual realization that there was an unreasonable risk to his guests involved in a continuance of the journey. Even if Mason knew that something was wrong with the car, that it was " logy " on hills, that it did not steer well, this was far from being realization of the fact that a serious mechanical defect, making further travel dangerous, was involved. Mason's own conduct in exposing his wife and himself to the peril of traveling farther in the car indicates that he was not conscious of the peril. If Mason thought the car safe for himself he could not have realized that it was unsafe for his guests. Then, also, if Mason's failure to realize that the " something " which was wrong with the automobile constituted a dangerous condition was due to his lack of mechanical knowledge, that was a risk assumed by the guests when they accepted the invitation to take the trip. Moreover, all of the guests were drivers of automobiles, so that if Mason did realize the danger indicated by the swerve, he could not have thought that his guests were unaware of it. Therefore, we think no obligation rested upon Mason to warn his guests of a peril involved in a continuance of the journey.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.