Estelle M. FASS, as Executrix of the
Estate of Maurice I. Fass,
Deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Alma S. RUBRECHT, as Administratrix
of the Estate of Larry John Rub-
recht, Deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. 16288, 17031.

United States District Court
E. D. New York.

Jan. 27, 1961.

Speiser, Quinn & O'Brien, New York City, for plaintiffs; David C. Quinn, New York City, of counsel.

Cornelius W. Wickersham, Jr., U. S. Atty. E. D. New York, Brooklyn, N. Y., for defendant; James M. Fitzsimons and Lawrence J. Galardi, Asst. U. S. Attys., Brooklyn, N. Y., of counsel.

BRUCHHAUSEN, Chief Judge.

These actions are brought to recover damages for the wrongful deaths of Larry John Rubrecht and Maurice I. Fass who were killed while passengers in one of the defendant's B–25 airplanes that crashed in Greenfield Cemetery, Long Island, New York, on September 13, 1955. The case was tried before this Court, without a jury. Both actions were brought pursuant to the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq.

It is not disputed that the B–25 aircraft was owned by the defendant and was operated and maintained by defendant's personnel.

### Stipulated Facts

The following facts were stipulated:

On September 13, 1955, a TB–25N twin-engine aircraft bearing Serial No. 45–822A took off from Runway 30 at Mitchell Air Force Base, New York, at 7:30 a. m., E.S.T.

There were six people on board the aircraft, three were members of the flight crew, and three others, not members of the flight crew.

The aircraft was carrying 1,083 gallons of fuel.

After takeoff, the following conversation was had between Mitchell Tower and the B–25:

"From B–25 to Mitchell Tower: We are returning into the pattern— we got one bad engine here.

"Tower: How bad are your difficulties?

"B–25: Looks like we have a stack blown. We are losing a little bit of oil.

"Tower: Are you going to declare an emergency?

"B–25: We are going to feather this engine.

"Tower: Request amount of fuel and number of people on board.

"B–25: We have got a full load of fuel and six people on board.

"Tower: Full load and six people. 822 request which engine, right or left.

"B–25: Right engine, tower, right engine.

"Tower: Check the base, you are number 1.

"Tower: 822, are you coming on Runway 5?

"B–25: High pitched scream sounding like We are going to hit."

The aircraft made a left turn after takeoff in an attempt to return to Mitchell Field.

The highest altitude reached by the aircraft, after takeoff, was approximately 1,000 feet.

The aircraft struck the ground in a nose-down position from approximately 200 to 300 feet. It struck the ground on its nose and left engine first.

The amount of time the aircraft was in the air between takeoff and crash-landing was approximately four minutes.

The flaps were found to have been extended 15 degrees at the time of the impact.

The landing gear was found to have been retracted at the time of the impact.

The Greenfield Cemetery, where the aircraft crash-landed, is approximately

two miles south of Mitchell Air Force Base.

The right engine was found to have been shut down, and the right propeller was found to have been fully feathered.

Weather conditions were not a contributing factor.

### The Legal Status of Larry John Rubrecht at the Time of His Death

■ The Government contends that one of the decedents, Larry John Rubrecht, being in active service at the time of the accident, has no cause of action under the statute, 28 U.S.C.A. § 1346(b), particularly that portion of it restricting the jurisdiction of this court to claims for negligence "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

It is conceded that Rubrecht, an enlisted man, was on leave status in active Federal service. He had served a tour of duty in Germany, and was presently returning home to Wyoming on leave. He was on board the ill-fated aircraft pursuant to Air Force Regulation 76–6, authorizing the use of military air transportation on a space available basis. The deceased, although on leave, was still in active service and under command of his superiors and subject to military orders. The case falls squarely within the rule of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, involving a claim for damages for the death of a member of the armed forces, sustained while on active duty. The Court 340 U.S. at pages 141, 143, 144 and 146, 71 S.Ct. at page 157 wrote:

"One obvious shortcoming in these claims is that the plaintiffs can point to no liability of a 'private individual' even remotely analogous to that which they are asserting against the United States. We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving. * * *

"It would hardly be a rational plan of providing for those disabled in service by others in service to leave them dependent upon geographic considerations over which they have no control and to laws which fluctuate in existence and value. * * *

"The absence of any such adjustment is persuasive that there was no awareness that the Act might be interpreted to permit recovery for injuries incident to military service. * * *

"We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."

See also Buer v. United States, 7 Cir., 241 F.2d 3, 64 A.L.R.2d 674; Jefferson v. United States, 4 Cir., 178 F.2d 518, and Griggs v. United States, 10 Cir., 178 F.2d 1.

The case at bar is distinguishable from Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 and United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139, and does not come within the exceptions stated therein.

It follows that the legal representative of Rubrecht has no cause of action under the Federal Tort Claims Act.

### Maurice I. Fass, At the Time of His Death, Had the Legal Status of A Licensee, and Not That of An Invitee, As Claimed by Plaintiff

■ Maurice I. Fass was a retired Army Officer. He executed a written "request" for transportation via military aircraft. (Defendant's Exhibit E). His destination was the Air Force Center at Denver, Colorado, to "straighten out his records." The said written request was in the form prescribed by paragraph 13 of Air Force Regulations 76–6. Colonel Fass was permitted to board the subject plane, free of charge, pursuant to the authority contained in paragraphs 4a and 4b of the said regulations. The journey was for personal reasons. His status was no different than that of a guest riding

in the motor vehicle of an owner. As such he was a licensee, not an invitee, toward whom was owed the duty to exercise ordinary and reasonable care and to apprise him of any danger of which the owner was aware. The defendant, the owner of the aircraft, was not and is not liable for a mechanical defect therein, even though by inspection it or its agents might have discovered such defect. Higgins v. Mason, 255 N.Y. 104, 174 N.E. 77; Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36.

The Doctrine of Res Ipsa Loquitur, Invoked by the Plaintiffs, Is A Rule of Procedural Law, Controlled by the Law of the Forum

■ In Lobel v. American Air Lines, Inc., 2 Cir., 192 F.2d 217, it was held that the doctrine of res ipsa loquitur is a rule of procedural law, rather than substantive law, and is controlled by the local law, the law of the forum, in this case the law of New York to which we now resort. See also Citrola v. Eastern Air Lines, Inc., 2 Cir., 264 F.2d 815.

The Law of New York Is That Where a Plaintiff Presents His Case on the Theory of Negligence and Introduces Specific Acts of Negligence, He May Not Invoke the Doctrine of Res Ipsa Loquitur

■ It has been held that when a plaintiff presents his case on the theory of negligence and introduces specific acts of negligence, he may not invoke the doctrine of res ipsa loquitur. The essence of a plaintiff's reliance upon the rule is that the cause of the accident is unknown to him, hence it would be inconsistent in one breath to produce concrete evidence of negligence and, on the other hand, disclaim knowledge of it. Holtfoth v. Rochester General Hospital, 304 N.Y. 27, 31, 105 N.E.2d 610, 31 A.L.R.2d 1113; United States v. Eastern Air Lines, Inc., D.C., 132 F.Supp. 787.

In Citrola v. Eastern Air Lines, Inc., supra, the court wrote that "if the plaintiff introduces evidence tending to prove a specific cause of the occurrence, naturally the strength of the possible inference that the occurrence was attributable to an unknown act of the defendant diminishes. * * * If [the claimant presents a complete explanation of the proximate cause of the occurrence], it would simply confuse a jury to present them with a choice between claimant's asserted theory and explanation and a res ipsa loquitur theory. If plaintiff's theory and proof purport to explain fully the cause there is no occasion to go beyond the theory." [264 F.2d 818]

The Factors Warranting the Application of the Doctrine of Res Ipsa Loquitur, Where Specific Acts of Negligence are Not Introduced by Plaintiff

In Citrola v. Eastern Air Lines, Inc., supra, at page 817, the court lists the factors under New York law which must be present to warrant the application of the doctrine of res ipsa loquitur, viz.:

1. That the instrumentality which produced the injury was within the exclusive possession and control of the person charged with negligence.

2. That such person had exclusive knowledge of the care exercised in the control and management of that instrumentality.

3. The production of evidence by the plaintiff of circumstances showing that the accident would not ordinarily have occurred without neglect of some duty owed to the plaintiff.

In a Case Where Res Ipsa Loquitur Is Applicable, the Burden of Proof Is Not Shifted from the Plaintiff. At Most, the Trier of the Facts May Draw an Inference of Negligence

In Citrola v. Eastern Air Lines, Inc., supra, the court held that an inference of negligence might be drawn, thus shifting the burden of explanation to the defendant, but not shifting the burden of proof. In this connection, the court, upholding the lower court's charge, wrote:

"The fact that the law permits you to draw this inference * * * does not shift the ultimate burden of proof to the defendant in any way, not even the burden of offering an

explanation as to how or why the crash occurred; the burden still rests with the plaintiff of establishing to your satisfaction by a preponderance of the evidence that the negligence of the defendant was the substantial factor contributing to causing the crash."

The trier of the fact, where the doctrine is applicable, is not obligated to draw an inference of negligence. "When all the evidence is in, the question for the jury (or other trier of the fact) is whether the preponderance is with the plaintiff." Foltis v. City of New York, 287 N.Y. 108, 38 N.E.2d 455, 462, 153 A.L.R. 1122,

"If, however, proof of the occurrence shows that the accident might have happened from some cause other than the negligence of the defendant, the presumption (of negligence) does not arise and the doctrine (of res ipsa loquitur) cannot properly be applied." Robinson v. Consolidated Gas Co., 194 N.Y. 37, 86 N.E. 805, 807, 28 L.R.A.,N.S., 586.

The Plaintiff, the Legal Representative of Colonel Fass, Was Not Entitled to Invoke the Doctrine of Res Ipsa Loquitur

■ In Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36, 38, it appeared that the plaintiff, a guest in a motor vehicle, was injured when it suddenly swerved and crashed into a tree. The court wrote:

"The problem in each case is whether the circumstances unexplained do justify an inference of negligence. Ordinarily, circumstantial evidence is insufficient where the circumstances are consistent with freedom from wrong.

\* \* \* \* \* \*

"Here the plaintiff was only a guest in the car. [Likewise Colonel Fass was only a guest in the defendant's airplane]. She assumed the risk of any defect in the automobile which was not known to the defendants. They assumed the duty to exercise reasonable care for her protection in the operation of the automobile. They were under no duty to exercise care to discover and repair defects not known to them. Higgins v. Mason, 255 N.Y. 104, 174 N.E. 77. The evidence, though unexplained, cannot possibly lead to an inference that the accident was due to lack of care in the operation of an automobile, for the probability that it occurred from a break in its mechanism is at least equally great. All that the evidence shows is that the accident may have occurred from any one of many causes, including, perhaps, negligence in operation."

The Rule That a Plaintiff in a Death Case Is Not Held to a High Degree of Proof Has No Application Where the Plaintiff Presents No Evidence of Negligence

■ The cases of Harshberger v. Associated Transport Inc., 2d Cir., 282 F.2d 179; Noseworthy v. City of New York, 298 N.Y. 76, 80 N.E.2d 744 and Wank v. Ambrosino, 307 N.Y. 321, 121 N.E.2d 246, hold that in a death case a plaintiff is not held to as high degree of proof as where an injured plaintiff can himself describe the occurrence. In other words but slight evidence of negligence is necessary. Nevertheless there must be some showing of negligence. Wank v. Ambrosino, supra.

The Evidence As to the Airplane's Mechanical Defects

■ It is undisputed that within four minutes after takeoff from Mitchell Field, the subject plane crash-landed in a cemetery while endeavoring to return to Mitchell Field and that it had a bad right engine. No evidence was presented as to any previous malfunctioning of the right engine.

After the accident the left engine was examined. The examiner testified on behalf of plaintiff that there were indications of leaking between the head and the barrel "but it is only an opinion whether they were leaking or not; I do not know."

The defendant's witness Charles Lancaster, a qualified engineer, greatly impressed me. He testified that the black substance and oil between the barrel and the head was an insufficient basis upon which to conclude that there was any leaking, also that oil leaks when an engine is idle.

The defendant's witness George W. Cline testified that the plane and its engines were regularly inspected in accordance with regulations and necessary repairs made. There is no proof to the contrary.

Any claim of negligence in the maintenance of the airplane fails for the following reasons:

1. There is no evidence that the defendant was aware of any defect. Accordingly, under the rule of law applicable to a licensee, previously mentioned, the defendant is not chargeable with negligence on this theory.

2. The plaintiff has failed to establish negligence on the part of the defendant in maintenance of the equipment.

### The Evidence Pertaining to the Operation of the Airplane

The legal representative of Colonel Fass may not recover unless she establishes by a fair preponderance of the credible evidence that he met his death by reason of the negligent operation of the aircraft.

The principal claims of negligence are that Major Judy, the pilot, failed to retract the wing flaps after take-off, allegedly resulting in increased drag and inability to return to Mitchell Field, also that the pilot failed to maintain flying speed, thereby causing a loss of directional control and an uncontrolled landing.

The said plaintiff's witness, Lloyd G. Ryan, testified that while driving his motor vehicle he saw the B-25 passing over Weir Street, heading in an easterly direction; that it was descending in a slightly tail-low altitude; that the tail was fish-tailing back and forth; that the engine was making a loud noise; that the nose was raised, the right wing dropped, the left wing arose in a rapid whipping fashion and that the nose then pointed earthward.

There is evidence that the left engine was not developing full power.

Under cross-examination, Mr. Ryan stated that the airplane landed with its nose pointing in a westerly direction, the opposite direction from which it was traveling.

The plaintiff's expert, Herbert Beers, averred that to accomplish this the pilot would have had to have two perfectly functioning engines.

The defendant's expert, Ralph S. Edwards a most credible witness, testified that an accomplished pilot could not have made the observations from the ground, claimed to have been made by Mr. Ryan. Edwards also stated that the last maneuver, described by Mr. Ryan, was not possible with a 14-ton plane, traveling 100 miles per hour; that the pilot could not lower the flaps and make a controlled crash landing; that he would be obliged to commence lowering the flaps at least 3,000 feet away and that it is difficult to judge at such distance. The wing flaps at the time of impact were at eleven degrees, indicating that they had been lowered. The plaintiff's witness, Beers, said he would have lowered the nose, also that he would have acted exactly as the pilot did; that if the engine was not properly functioning, flight could not be sustained. In fact, Beers testified on cross-examination that the pilot's mistakes were those of judgment.

The buildings in the vicinity of the cemetery were factors with which the pilot was dealing.

The defendant's photographer, William Buckhout, stated that after the crash, the nose of the aircraft pointed in a northeasterly direction. This indicates that it was under control.

I am convinced that the pilot acted properly in this unfortunate situation and was not negligent.

The foregoing constitutes the findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The defendant is entitled to judgment. Settle decree on notice.