196

Ivy Brzostowski, Appellant, *v.* Coca-Cola Bottling Co., Inc., Respondent.

Sigmund Brzostowski, by His Guardian ad Litem, Ivy Brzostowski, Appellant, *v.* Coca-Cola Bottling Co., Inc., Respondent.

Fourth Department, April 11, 1962.

*Tony Mancuso* for appellants.

*Mackenzie, Smith, Lewis, Michell & Hughes (John P. Lawton* of counsel), for respondent.

HALPERN, J. On a summer day in 1957, the infant plaintiff, a boy 10 years of age, and two other boys entered the defendant's bottling plant through a large, open garage door, and asked an employee for a bottle of " coke ". The Coca-Cola plant was across the street from a school, and children often played on the lawn in front of the plant and from time to time employees gave them bottles of Coca-Cola and other soft drinks. However, on prior occasions the drinks had been given to the children while they were standing in the driveway, just outside the open garage door. On the occasion in question, the defendant's employee gave each of the boys a bottle of Coca-Cola while they were standing inside the plant. He then left them and returned to his work. The employee made no objection to the boys' presence in the plant or to their remaining there while they consumed the drinks. The boys were about 12 to 15 feet from a moving conveyor belt which was electrically operated and which carried bottles of soft drink to a loading platform. The employee did not warn the boys to stay away from the conveyor belt or to stay away from the machinery generally. After the boys had consumed their drinks, two of them put the empty bottles on the floor between the door and the machines. The infant plaintiff walked over and placed the empty bottle on the conveyor belt. It started to fall through a hole in the belt; the plaintiff tried to retrieve it and his arm was caught in the machine. Responding to his outcry and that of his friends, the employee came back on the scene and turned off the conveyor machine.

Actions were brought for the injury to the infant plaintiff and for the consequent medical bills. Upon the trial, the manager of the defendant's plant was called as a witness for the plaintiffs and he testified that children were " good customers " for the company's product and that the company was desirous of acquiring and maintaining their good will. Among other things,

it arranged for tours of the plant by children in escorted groups, and it always gave them free soft drinks at the conclusion of the tours.

The Trial Justice submitted the case to the jury and the jury returned a verdict in favor of the infant plaintiff in the amount of $1,000 and in the amount of $500 in favor of his father. The Trial Justice subsequently set aside the verdicts and granted the motion to dismiss the complaints made at the close of the case, upon which he had reserved decision.

The dismissal of the complaints was, in our opinion, erroneous. Under a proper charge, the jury would have had the right to find that the infant plaintiff was a licensee upon the premises and that the defendant, through its employee, had failed to exercise the care required under the circumstances to warn the child of the danger of coming into contact with the moving machinery.

First, as to the infant plaintiff's status, the jury would have been justified in finding that he was a licensee rather than a trespasser. The boys had the right to rely upon the apparent authority of the defendant's employee to give consent to their entering upon the premises to obtain soft drinks and to their remaining there while consuming the drinks and disposing of the empty bottles. In view of the proof of the practice upon prior occasions, the jury had the right to find that the employee had apparent authority to give the boys the drinks. An employee at a bottling plant who has apparent authority to give away drinks also has apparent authority to allow the donees to enter the plant to obtain the drinks and to remain there while consuming them, or at least a jury might so find.

Furthermore, apart from any question of the authority of the specific employee involved in the case, the jury would have been justified in finding, in view of the past practice of the company and its evident interest in retaining the good will of the children in the neighborhood, that the boys had the right to assume that the company had no objection to their entering the plant to obtain free drinks. It is true that on prior occasions the boys had happened to remain outside the door when they had asked for and received the free drinks, but there was no proof indicating that they had been told, or that they knew or should have known, that it was not permissible for them to go into the plant for the same purpose.

Once it is found that the boys occupied the status of licensees, rather than that of trespassers, it follows that the defendant owed them some duty of care. The duty owing to licensees is generally stated as consisting of two branches: (1) The duty to

use care to avoid injuring the licensee by bringing to bear any force against him. (The breach of this duty is usually referred to in the New York cases as active or affirmative negligence [*Barry* v. *New York Cent. & Hudson Riv. R. R. Co.*, 92 N. Y. 289; see Restatement, Torts, § 341; see, also, Prosser, Torts [2d ed.], pp. 445–449; 2 Harper and James, The Law of Torts, § 27.10, pp. 1475–1476].) (2) The duty to exercise care to warn the licensee of any danger known to the landowner which is not known to the licensee and which the licensee could not be expected to perceive in time to avert injury (Restatement, Torts, § 342, quoted with approval in *Higgins* v. *Mason*, 255 N. Y. 104, 109). Such a danger is sometimes referred to in the cases as a "trap" (*Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391, 394). The plaintiff having " the status of a licensee ", the defendant owed him " the duty to exercise reasonable care to disclose * * * dangerous defects known to defendant and not likely to be discovered by plaintiff " (*Krause* v. *Alper*, 4 N Y 2d 518, 521). Section 342 of the Restatement of Torts reads: " A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein." This was quoted by the Court of Appeals from section 212 of an earlier draft of the Restatement which became section 342 without change, as " clearly stat[ing] " the " duty of an owner of premises to a gratuitous licensee ". (*Higgins* v. *Mason, supra,* p. 109.) (See, also, Prosser, Torts [2d ed.], pp. 449–450; 2 Harper and James, The Law of Torts, § 27.9, pp. 1471–1474.)

The first branch of the duty owing to a licensee cannot be invoked in this case. While moving machinery was involved, the machinery would not have caused injury to the child if the child had not voluntarily come in contact with it. Therefore it cannot be said that this is a case of the defendant's bringing to bear a force against the child.

However, the second branch of the duty is applicable here. The moving machinery might well be found to have been a trap from the standpoint of the child licensee. While an adult would have appreciated the danger of coming into contact with a moving conveyor belt, it might well be found that a 10-year-old child could not reasonably be expected to understand and appre-

ciate the danger. In that case, the defendant would be under a duty to warn the child of the danger. This is not to say that there is a greater duty to a child licensee than there is to an adult licensee. The duty remains the same, that is, a duty to warn of dangers known to the defendant but not known to the licensee, or readily perceivable by him. But in applying this principle the fact that the occupier of the land is dealing with a child must, of course, be taken into account. What is not a trap as to an adult may well be a trap as to a child. The occupier must take into account the natural curiosity of children, their propensities and proclivities, the attractiveness of moving machinery to them, and their "lack of appreciation of danger, and [their] consequent indiscretion" (*Di Biase* v. *Ewart & Lake*, 228 App. Div. 407, 409–410, 412, affd. 255 N. Y. 620). The occupier must take "into consideration the well-known propensities of children to climb about and play" (*Collentine* v. *City of New York*, 279 N. Y. 119, 125; see, also, Prosser, Torts [2d ed.], p. 450).

The need to warn child licensees of dangers which might be obvious to adult licensees is well stated in *Comment b* of section 342 of the Restatement of Torts:

"If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it.

"On the other hand, the possessor should realize that the fact that a dangerous condition is open to the perception of children licensees may not be enough to entitle him to assume that they will appreciate the full extent of the risk involved therein. * * * Even if they know of the condition, there may be risks which it is not reasonable to assume that children will appreciate. In such case, the possessor does not perform his duty by merely calling the condition to the attention of the children licensees. He is under a further duty to disclose to them so much of the risk as he has reason to believe that they will not themselves appreciate." (See, also, Restatement of Torts Second, Tentative Draft No. 5, § 343B.)

The trap theory has been applied in favor of child trespassers as well as in favor of child licensees (*Mayer* v. *Temple Properties,* 307 N. Y. 559), but as applied to a trespasser the trap theory is given a much narrower meaning. A child trespasser can recover upon the trap theory only if a dangerous condition was maintained upon the premises with the intention of inflicting injury on anyone trespassing thereon or with what is the equivalent of intention, reckless and wanton disregard

of the consequences (*Mayer* v. *Temple Properties, supra,* p. 565). But in the case of a child licensee, it is enough to show that the dangerous condition was known to the defendant, that the danger was one which children were unlikely to appreciate, and that the defendant failed to warn the child licensee of the danger. (Restatement, Torts, § 342, *supra.*)

Indeed, in the case of injury to a child licensee, it is not necessary to use the characterization of a "trap" in order to sustain a recovery. The duty of the occupier of the premises may be stated in terms of a duty to exercise reasonable care under all the circumstances. Among the circumstances to be considered in determining what is required to be done in the exercise of reasonable care are, of course, the facts that, on the one hand, the licensee is present on the premises only for his own benefit and, on the other hand, the licensee is a child who may be attracted to a dangerous object on the premises, the danger of which he may be unable to appreciate. Under such circumstances, it is the duty of the occupier to warn the child licensee against the danger which is known to him and which the child, because of his immaturity, is not likely to apprehend or appreciate. (See *Krause* v. *Alper,* 4 N Y 2d 518, *supra; Higgins* v. *Mason,* 255 N. Y. 104, *supra; Sarapin* v. *S. & S. Corrugated Paper Mach. Co.,* 209 App. Div. 377; *Harkins* v. *East New York Sav. Bank,* 260 App. Div. 394; *Kittle* v. *State of New York,* 245 App. Div. 401, affd. 272 N. Y. 420; cf. *Parnell* v. *Holland Furnace Co.,* 234 App. Div. 567, affd. 260 N. Y. 604; cf. *Soto* v. *City of New York,* 9 N Y 2d 683; cf. dissenting opinion of Judge (now Chief Judge) DESMOND, in *Carbone* v. *Mackchil Realty Corp.,* 296 N. Y. 154, 160 and see the discussion of the *Carbone* majority opinion in *Mayer* v. *Temple Properties,* 307 N. Y. 559, 564, *supra; Dublin Cotton Oil Co.* v. *Jarrard,* 40 S. W. 531, affd. 91 Texas 289).

The defendant makes much of the fact that there was a company rule forbidding unescorted children from going through the plant. This rule was not known to the infant plaintiff, so it has no bearing upon his right to rely upon the apparent authority of the employee to consent to his presence upon the premises. So far as the duty of warning is concerned, the existence of the rule cuts against the defendant rather than in its favor. It constitutes a recognition that the moving machinery might be a hidden danger as to children because of their inability to understand the danger of their coming in contact with the machinery and it underlines the duty of the defendant to give warning of the danger to any child who is on the premises with its consent.

The child licensee in this case was in substantially the same position as a child entering the home of a friend as a social guest. A social guest is a licensee (*Krause* v. *Alper,* 4 N Y 2d 518, *supra*). The householder, if personally present or if present through an employee or agent, would be under the duty of warning the child of a danger of which he was aware and of which the child might be unaware because of his immaturity.

An analogy may also be found in the case of a social guest in an automobile. While the automobile owner owes no duty to a gratuitous passenger to inspect the automobile or to remedy any defects for the passenger's benefit, he is under a duty to warn the passenger of any danger of which he has actual knowledge and of which the passenger is unaware (*Higgins* v. *Mason,* 255 N. Y. 104, 109, *supra*). Here, too, the fact that the passenger is a child would have to be taken into account; a danger which would be obvious to an adult might not be obvious to a child and a special duty of warning would then arise.

The case of *Connelly* v. *Carrig* (244 N. Y. 81) cited in the dissenting opinion is not controlling here. The *Connelly* case was decided on its own particular facts; the court did not purport to lay down any general rule that there is not under any circumstances a duty to warn a child licensee (or invitee) of the danger of coming in contact with moving machinery. In the *Connelly* case, it appeared that the infant plaintiff had actual knowledge of the precise nature of the danger and, of course, there was no duty to give him any warning in that situation. According to the plaintiff's own testimony, as summarized by the Court of Appeals, '' he had frequently seen the coffee grinder prior to that time and knew it was operated by electricity and when the current was on and off, and that the grinder would continue to run for a few seconds after the current was turned off.'' Nevertheless, immediately after the current had been turned off, the plaintiff '' deliberately and intentionally, according to his own testimony, inserted his finger in the spout from which the ground coffee came. He did this for the purpose of getting, if he could, some of the unground coffee '' (pp. 82–83). This was a clear case of a voluntary assumption of a known risk as a matter of law. It has no resemblance to the present case. In our case, it certainly cannot be said as a matter of law that the infant plaintiff knew and understood the danger of attempting to retrieve the bottle when it started to fall through the hole in the conveyor belt, or that the danger was so obvious that. any child of the plaintiff's age could reasonably be expected to appreciate it. The question of the nature of the danger, whether a child was likely to appre-

ciate it, and whether there was a need for warning — all these were questions of fact for the jury.

There is no need to rely upon the " attractive nuisance " or " turntable " doctrine in this case, either as laid down in *Railroad Co.* v. *Stout* (17 Wall. [84 U. S.] 657) or as reformulated by the American Law Institute in section 339 of the Restatement of Torts. It is therefore unnecessary to speculate as to whether the rejection of that doctrine in the early New York cases represents the present law or whether the later cases indicate an ultimate acceptance of the doctrine (*Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301; *Mendelowitz* v. *Neisner*, 258 N. Y. 181; *Morse* v. *Buffalo Tank Corp.*, 280 N. Y. 110; *Collentine* v. *City of New York*, 279 N. Y. 119, *supra*; *Parnell* v. *Holland Furnace Co.*, 234 App. Div. 567, affd. 260 N. Y. 604, *supra*; *Mayer* v. *Temple Properties*, 307 N. Y. 559, *supra*; see 3 Warren's Negligence, § 133, p. 15). We may assume for the purpose of the present case that the " attractive nuisance " doctrine is not the law of New York but that fact has no relevance in this case. The doctrine need be relied upon only in the case of an injury to a child trespasser. In such a case, it may be necessary to invoke the " attractive nuisance " doctrine in order to overcome the immunity which would otherwise insulate the occupier of the land from liability. But in the case of a child licensee, there is no question of any special immunity of the occupier of the land; the child licensee is lawfully on the premises and therefore the question is only one of the care to be required under the circumstances.

In England, the " attractive nuisance " doctrine has not been accepted (*Addie & Sons* v. *Dumbreck* [1929] A. C. 358) but it is nevertheless the settled law that " if the child is a licensee," an occupier of land " must, over and above his ordinary duty of care to [adult] licensees, take reasonable care to prevent damage to the child from dangerous things with which he is likely to meddle (*Cooke* v. *M. G. W. Railway of Ireland* [1909] A. C. 229 at p. 238; *Latham* v. *Johnson* [1913] 1 K. B. 398) " (Law Reform Committee, Third Report, 1954, Cmd. No. 9305, p. 16).*

---

*Upon the recommendation of the Law Reform Committee, Parliament adopted the Occupiers' Liability Act of 1957, under which the classification of visitors upon the premises of another into licensees and invitees has been abolished and the duty of the occupier has been put in terms of "a common duty of care" as to all persons upon the premises with his consent. The immunity as to trespassers has been left unchanged. The Report of the Law Reform Committee is cited, of course, only for its authoritative statement of the common law as it existed prior to the enactment of the statute.

In the *Cooke* case, as elucidated in the subsequent case of *Addie & Sons* v. *Dumbreck* (*supra*), it was held that a child on the premises of a railroad company with the implied permission of the company could recover for injury resulting from his playing upon an unlocked turntable, even though a trespassing child could not recover for such an injury. " [T]he decision in *Cooke's* case * * * rests upon the ground that there was evidence from which the jury were entitled to infer that the plaintiff was on the turntable with the leave and license of the railway company, and that the turntable was in the nature of a trap " ([1929] A. C. 358, 366). (See, also, Fleming, Law of Torts, pp. 478–479; Street, Law of Torts, p. 183; James, General Principles of the Law of Torts, pp. 180–182.)

As the English authorities make clear, the rejection of the " attractive nuisance " doctrine as to trespassing children has no bearing upon the duty owing to a child who is lawfully on the premises. The dangerousness of machinery upon the defendant's premises, the attractiveness of it, and the likelihood of the child licensee's being incapable of appreciating the danger, are all properly to be taken into account in determining the duty of the defendant to the child licensee.

Applying the principles discussed above to the present case, a jury would have the right to find that the infant plaintiff was a licensee upon the defendant's premises and, having so found, it would have the further right to find that the defendant had breached the duty it owed to the plaintiff as a licensee by failing to warn him of the danger of coming into contact with the moving conveyor belt.

For these reasons, we are of the opinion that the dismissal of the complaints was improper. However, we find it impossible to reinstate the verdicts in favor of the plaintiffs because the charge upon which the case was submitted to the jury did not correctly set forth the grounds upon which the defendant might properly be held liable under the circumstances and, therefore, the jury was not called upon to decide what we consider to be the crucial questions of fact in the case.

The judgment and order dismissing the complaints should be reversed and a new trial granted.

WILLIAMS, P. J. and HENRY, J. (dissenting). The infant plaintiff, with two other boys, without invitation or authority entered defendant's bottling plant where one of defendant's employees gave each of them a bottle of Coca-Cola. After the boys consumed the drinks, two of them put their empty bottles on the floor but the infant plaintiff walked about 12 or 15 feet to a

conveying machine and placed his empty bottle on it. The bottle started to fall and he tried to catch it. His arm was caught and injured by the machine. One of the boys testified that on one previous occasion he and one or two other boys had been given Coca-Cola outside the plant. There was no other testimony that Coca-Cola had been given away outside the plant. There was testimony that no children had ever entered the plant before the accident unless they were accompanied by adults or were on a company guided tour. There was no testimony that the machine was defective or dangerous. It was guarded by a railing.

The prevailing opinion is based upon the conclusion that the employee did not warn or caution the plaintiff against the dangers of the machine. The testimony in this respect is confused and unsatisfactory. It does not meet the standard of preponderance required of the plaintiff. The plaintiff did not testify in this respect; neither did the second boy, John Majka. Finally, in answering to leading and prompting by plaintiff's attorney, the third boy, Richard Koedus, made the amazing statement that the boys did not "have any talk with this man [the employee] after or prior to receiving the coke." The conclusion so strongly relied upon by the majority finds little or no support in the record. In any event there was no duty to warn against the obvious.

However, it is admitted in the prevailing opinion that the plaintiff was at best a bare licensee and that the duty of defendant toward him was to refrain from active or affirmative negligence. We ask, how does failure to warn become affirmative negligence?

The prevailing opinion is also founded upon the conclusion that this machine was a "trap". Just how a large machine in full operation, clearly visible and in plain sight and hearing, becomes a "trap" is difficult for us to perceive. It does not become such because of "propensities and proclivities [of children], the attractiveness of moving machinery to them" (p. 200, prevailing opinion). Incidentally the case of *Di Biase* v. *Ewart & Lake* (228 App. Div. 407) relied upon by the majority for this theory was a case which involved a plaintiff invitee and the general statements concerning duty of care contained in that case refer to duty as to invitees and not to licensees. The court in holding that a needle six inches long by which a four-year-old child's eye was injured was not a dangerous instrument and in dismissing the complaint said (p. 410): "It cannot be said that this needle is an instrument which in and of itself is inherently dangerous. There is nothing hidden or latent about it which

could cause injury. It is not a trap. It is not a hazardous agency like gunpowder, dynamite or nitroglycerine. Almost any article which is misused may become dangerous."

Perhaps we need do little more in an effort to sustain our position than to refer to *Connelly* v. *Carrig* (244 N. Y. 81). That case is very similar to this except that there the plaintiff was in the preferred and advantageous position of an invitee. He entered defendant's store and put his hands in a coffee grinder.

The court reversed a judgment for the plaintiff on the ground that no negligence on the part of the defendant had been shown, saying: " There was no claim that it was of unusual construction or that its appearance was such that it would naturally attract a child of the age of the plaintiff. There was no proof that any usual or customary guards were omitted. The burden was upon the plaintiffs to prove that the grinder required a guard and that the failure to have such guard was the proximate cause of the injury to the infant " (p. 83) and further " I am unable to see, upon the foregoing statement of facts, upon what principle defendant could be held liable. He had a right to have the coffee grinder in his store, and he had a right to use it in connection with the business conducted therein. There was nothing to indicate that it was not adequately protected or that any protection was necessary " (p. 84).

Certainly the machine in question in the present case could not be classed as defective in a way not ascertainable upon reasonable inspection. See, also, *Carbone* v. *Mackchill Realty Corp.* (296 N. Y. 154, 158) and *Keenan* v. *Lawyers Mtge. Co.* (254 App. Div. 348, affd. 280 N. Y. 525). In both of the cases infant plaintiffs were given the benefit of the status of licensees.

We might say in closing that some of the cases cited in the majority opinion do not apply to licensees, but consider duties owed to invitees. (E.g., *Collentine* v. *City of New York*, 279 N. Y. 119, 124; *Parnell* v. *Holland Furnace Co.*, 234 App. Div. 567, 570.)

The judgment and order appealed from should be affirmed.

Bastow and Goldman, JJ., concur with Halpern, J.; Williams, P. J., and Henry, J., dissent and vote to affirm in opinion.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellants to abide the event.